People of the State of Illinois, Plaintiff-Appellee, v. William Johnson, Defendant-Appellant.

Gen. No. 51,464.

First District, Second Division.

November 26, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Norman W. Fishman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and John M. Goldberg, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

In a two-count indictment, the defendant, William Johnson, and one Charles Culp were jointly charged with theft of an automobile exceeding $150 in value and with criminal trespass to vehicle. In a subsequent jury trial upon this indictment, the defendant was convicted only of criminal trespass to vehicle, a misdemeanor and a violation of Ill Rev Stats (1965), c 38, § 21–2. After motions for a new trial and in arrest of judgment were denied, judgment was entered and the defendant was sentenced to one year in the County Jail. He appeals contending: (1) the trial court erred in denying the defendant's motion to suppress his oral confession based upon an alleged lack of voluntariness; (2) the alleged inconsistency of the jury in convicting him only of criminal trespass to vehicle, thereby, by implication, acquitting him of theft showed a reasonable doubt that he had committed any crime at all; (3) prejudicial remarks of the prosecutor in closing argument constituted reversible error, denying the defendant a fair trial; (4) the trial court committed prejudicial error by failing to instruct the jury that the alleged verbal admissions of the defendant should have been received with caution. The facts follow.

445

At the hearing on the pretrial motion of the defendant to suppress his oral confession, the State produced as witnesses the two officers who arrested the defendant without a warrant; the two officers who drove the squadrol which transported the defendant and his co-indictee, Culp, from the arrest scene to the police station; and the two detectives who conducted the arrest investigation. The two arresting officers testified that they did not threaten or strike the defendant when they arrested him along with Culp at 2:00 a. m. on August 20, 1965, and neither did the two officers driving the squadrol which arrived shortly thereafter. Continuing, the officers stated that they could not remember if they advised the defendant of his right to remain silent or to consult with counsel. They did say that the defendant, at the arrest scene, denied any participation in the theft of the automobile and never asked to see a lawyer.

The two police officers who drove the squadrol that morning testified that they did not strike or threaten the defendant nor did anyone in their presence. As for the testimony of the detectives, Shereikis testified that he and his partner, Krause, were assigned to an arrest investigation of an auto theft. Accordingly, they arrived at the police station at approximately 2:45 a. m. on August 20, 1965, whereupon they met the defendant and Culp. On cross-examination, Shereikis stated that he did not advise the defendant of his right to remain silent and his right to counsel. In the detective's questioning of the defendant in the police station, the accused orally admitted that he was walking in the particular neighborhood where the crime occurred and stated that "he was looking for a car to ride around in and they happened to find one." Culp also orally admitted his participation in the theft. (At the time of the trial, Culp had pleaded guilty and was awaiting sentencing.) Detective Krause corroborated this testimony and testified that he did not advise

446

the defendant of his right to remain silent and of his right to counsel.

In support of his motion to suppress, the defendant testified that one of the two arresting officers allegedly struck him and Culp and promised to release them in exchange for money. They were not struck after being put in the squadrol.

Charles Culp corroborated the testimony of the accused. On cross-examination, he identified one of the arresting officers as being the one who struck the defendant and asked for money, and he also identified one of the squadrol officers as having struck them.

The State then called, in rebuttal, the arresting officer whom the defendant and Culp had charged with alleged police misconduct at the arrest scene. The officer denied these accusations. The motion to suppress the oral confession of the defendant on the basis of its alleged involuntariness was then denied.

At the trial of the cause before the jury, the State presented three witnesses: the owner of the auto which was stolen; one of the arresting officers; and one of the detectives in whose presence the defendant had allegedly made an oral confession. The first witness for the State, Raven Knighten, established her ownership of the auto, stated that it was a red 1963 Chevrolet Corvair for which she had paid $1,900 in cash in addition to her old car, and testified that on August 19, 1965, at about 6:00 p. m., she parked this vehicle in front of her home. When she and her husband left their home in his car at approximately 7:30 p. m. that same evening, her auto was parked where she had left it. When they returned to their home between 9:00 and 9:30 p. m. that same evening, August 19, 1965, her car was gone. Her husband reported this to the police, and the next morning he went to the police station and reclaimed it. Upon examining her

car, she noticed that "the ignition switch had been snatched out; it was hanging . . . ."

On cross-examination, this witness stated that when she parked her auto in front of her home, its doors and windows were locked. Furthermore, before her husband left with her that night, he also checked the car to determine that its doors and windows were locked. When she examined the car after its recovery, she did not notice any windows broken but a screwdriver was on the floor. Her husband had left some of his tools in her car prior to the theft. This was her husband's screwdriver.

One of the arresting officers called by the State testified that at approximately 2:00 a. m. on August 20, 1965, he and his partner, in their squad car, saw an automobile, with its headlights off, fail to stop for a red traffic light. The vehicle was a red 1963 Corvair and there were two people in it. Continuing, this police officer testified that he and his partner then gave chase and were able to halt the vehicle in an alley. Both vehicles came to a stop, head-on, approximately 10–15 feet from each other. This officer immediately put the police spotlight on the driver of the other vehicle and observed that he was "a male negro, dark complexioned, thick lips, and he wore a red shirt." The driver of this auto was under his observation for one or two minutes. The arresting officer then identified the defendant in the courtroom as being the driver of the red Corvair which he and his partner had stopped in the alley.

The driver and the occupant of the Corvair were successful, however, in fleeing from the police at the time of the initial confrontation. The police examined the Corvair and noticed that the ignition had been pulled. It was the testimony of this police officer that in continuing the search in the immediate neighborhood for the occupants of the auto, he and his partner, while in their squad car, saw two men turn a corner and walk toward them. One of the men was the same man whom this

448

witness had seen earlier driving the red Corvair. He was wearing a red shirt. When the police officers called to them, both men started to flee. The record is silent as to how the police apprehended them. Continuing, this witness testified that in answering the questions of the police officers concerning why they were in this neighborhood at approximately 2:30 a. m., the defendant stated that he was visiting a friend who lived in the neighborhood but could not remember his name or address. The police officers then ascertained, through police communications, that the 1963 Corvair was a stolen vehicle. The defendant and his companion were transported to a police station in the squadrol.

On cross-examination, the arresting officer stated that when he saw the defendant on the street immediately prior to placing him under arrest, the accused was 15–25 feet away from the squad car and the street was very well lighted with vapor lights. He saw the red shirt immediately and was able to see the defendant's face well enough to be positive he was the man he had seen earlier driving the stolen vehicle. It was this officer's testimony that at the scene of the arrest, the accused denied stealing the auto.

One of the detectives who conducted the arrest investigation of the defendant and Culp testified for the State and stated that he had a conversation with the defendant in the police station at approximately 2:45 a. m. on August 20, 1965. Also present were the two arresting officers and the detective's partner. In response to the questions of this witness, the defendant stated orally that he and Culp "noticed this Corvair; they got in the car, Johnson said he found a screwdriver in the car, 'popped' the ignition, started the car, and drove it away."

On cross-examination, this witness testified that he transcribed the oral remarks of the defendant onto a piece of paper and he later incorporated these written notes into the arrest investigation report signed by both

detectives. This report was then identified as Defendant's Exhibit #2, and after reading it, the detective admitted that it failed to contain a statement made by the defendant that he found the screwdriver in the car and used it to "pop" the ignition. On redirect examination, the detective testified that the arrest investigation report contained a statement that the defendant orally admitted "popping" the ignition, but on recross-examination, the detective testified that the report did not specify that the defendant admitted "popping" the ignition. Rather, the report stated that the "arrestees" admitted this.

The defendant and Charles Culp testified for the defense. The defendant denied stealing the auto or ever riding in it. It was his testimony that he met Culp as he (i. e., the defendant) was walking home. He denied attempting to flee when the police squad car arrived and he denied ever admitting in the police station that he took the auto and "popped" the ignition. He did state that one of the arresting officers allegedly struck him a few times and allegedly solicited a bribe.

On cross-examination, the accused stated that at the time of his arrest he was approximately eight blocks from his home and was returning there. Culp met him on the street at 1:45 a. m. on August 20, 1965, and both started to walk together. They knew each other slightly. The defendant was coming from a tavern located in the area. He was not with anyone in the tavern. The accused stated he was wearing a red shirt on the morning of August 20, 1965. He never told anyone in the police station that he had been allegedly struck by police officers that morning.

Charles Culp testified that he was arrested with the defendant on August 20, 1965, but the defendant was never with him in the stolen vehicle. Some other persons were. In rebuttal, the State called the two arresting officers who denied ever striking the defendant or soliciting a bribe or seeing any other policeman in their presence

450

doing so. The State, over objection and in an attempt to impeach the credibility of the defendant who had testified, introduced into evidence certified copies of documents signed by the Clerk of the Circuit Court of Cook County indicating that the defendant had twice been found guilty of an infamous crime on a plea of guilty.

The initial contention of the defendant is that the trial court erred in denying the pretrial motion to suppress his oral confession based upon an alleged lack of voluntariness. In his verified written motion, the defendant specified three grounds for the suppression of his oral confession: he was not advised of his right to counsel; he was not advised of his right to remain silent; he was twice struck by police officers. Since the trial of the instant case commenced in December, 1965, the constitutional principles pertaining to the admissibility of confessions found in Escobedo v. Illinois, 378 US 478, 84 S Ct 1758 (1964), apply to this case but not those found in Miranda v. Arizona, 384 US 436, 86 S Ct 1602 (1966). See Johnson v. New Jersey, 384 US 719, 86 S Ct 1772 (1966).

In Johnson v. New Jersey, supra, the United States Supreme Court declared that the precise holding of Escobedo required an accused, in police custody and being interrogated as the prime suspect, to request to consult with his counsel, which request was denied by the authorities. This was the finding of the Illinois Supreme Court in People v. Hartgraves, 31 Ill2d 375, 380, 202 NE 2d 33, 36 (1964), cert den 380 US 961 (1965):

> "We do not, however, read the Escobedo case as requiring the rejection of a voluntary confession because the State did not affirmatively caution the accused of his right to have an attorney. . . ."

In the instant case, the two arresting officers testified at the pretrial hearing on the motion to suppress that the accused did not ask to see an attorney at the

451

time of his arrest or at any other time. The accused was not asked any questions by his counsel regarding this aspect of the case. It thus stands uncontradicted in the record that the defendant did not request legal assistance. His oral confession was given to the detectives in the police station within one hour following his arrest. Following the legal principles enunciated in Escobedo, Johnson and Hartgraves, it follows that the failure of the police to advise the defendant of his right to counsel did not, per se, render his oral confession inadmissible.

 Since this case was tried before Miranda was decided, failure of the police to advise the defendant of his right to remain silent did not in and of itself render his later confession inadmissible, but such failure along with the failure to advise the defendant of his right to counsel were attendant circumstances to be considered by the trial court in determining the voluntariness of the oral confession. See People v. Jackson, 35 Ill2d 162, 220 NE2d 229 (1966). Adjudication of the police misconduct allegation in the motion to suppress rested upon the credibility of the patrolmen and detectives who testified for the State as opposed to the defendant and his coindictee. After carefully reviewing the record, we cannot say that the conclusion of the trial court in finding the confession to be voluntary is either manifestly against the weight of the evidence or clearly erroneous. See People v. Kirk, 36 Ill2d 292, 222 NE2d 498 (1966). We find no reason to disturb its ruling.

██ Secondly, the defendant urges that the inconsistency of the jury in convicting him only of criminal trespass to vehicle, thereby, by implication, acquitting him of theft shows a reasonable doubt that he committed any crime at all. We disagree. The record contains ample competent evidence from which the jury could have reasonably concluded, as it did, that the defendant had knowingly entered the vehicle of another without authority thereby supporting a conviction for criminal trespass to

vehicle. The owner of the vehicle testified that she locked all doors and windows of her car before leaving her home but upon returning she noticed that her auto was gone. One of the arresting officers identified the defendant as one of the men he and his partner had stopped in an alley. At that time the accused was driving a car which was later discovered to be stolen, and which was, in fact, the property of one of the witnesses for the State.

After stopping the auto in the alley, the officer beamed a spotlight into the interior of the curbed vehicle and had an opportunity to observe the physical characteristics of the driver and to notice that he was wearing a red shirt. The officer also testified that the defendant, along with his companion, escaped from the police in the initial encounter but was observed by this officer in the immediate neighborhood shortly thereafter. He was wearing a red shirt. Once again, the defendant and his companion sought to flee from the police but were unsuccessful this time. The defendant denied participation in any crime, denied that he attempted to flee from the police at any time, but admitted he was wearing a red shirt at the time in question. A witness for the defense, Charles Culp, testified that the defendant was never with him in the stolen vehicle. Some other persons were.

 The jury was thus presented with a conflict in the evidence. As the trier of fact and evaluator of the credibility of the witnesses, it could have reasonably determined from all the evidence adduced at the trial that although the defendant did not intend to permanently deprive the owner of the automobile of its use or benefit and hence was not guilty of theft, he had, in fact, knowingly entered the vehicle of another without authority to do so and was thus guilty of criminal trespass to vehicle, a misdemeanor. Cf. People v. Chandler, 84 Ill App2d 231, 236, 228 NE2d 588, 591 (1967). Thus, the jury did not return an inconsistent verdict by convicting the de-

fendant of criminal trespass to vehicle and, by implication, acquitting him of theft.

Thirdly, the defendant contends that he was deprived of a fair trial by alleged prejudicial remarks of the prosecutor in closing argument. Specifically, the defendant complains of the following remark which referred to defense counsel:

> "Counsel could get Shereikis out from the back. He could have walked up here and said, 'Mr. Bailiff, I call Officer Shereikis to the stand,' and in two and a half minutes he would be on that stand. Why did not counsel call him? Because counsel knew what Shereikis would have said, that is why."

■ Since the early case of People v. Munday, 280 Ill 32, 117 NE 286 (1917), it has been established law in Illinois that the prosecution cannot comment unfavorably upon the failure of the defendant to produce witnesses unless it is manifest that it is within the power of the accused to produce such witnesses and they are not accessible to the prosecution. In the instant case, Detective Shereikis was equally accessible to the prosecution.

But the record indicates that this argument of the prosecutor was a retaliation to and was invited by an earlier argument to the jury made by defense counsel in which that counsel said:

> "Where is the other officer? (referring to Officer Shereikis.) There is another detective. Were they afraid to put the other detective on the stand? Why did they not bring him in? Maybe his memory was a little better, or maybe he was not willing to shade the truth."

■■ In People v. Wheeler, 5 Ill2d 474, 126 NE2d 228 (1955), our Supreme Court held that while it is error for the prosecutor to comment on the failure of the accused to produce witnesses who are equally accessible to the

454

prosecution, it is not error for the prosecutor to reply to a question propounded by counsel for the accused, and where defense counsel has asked why the State did not produce certain witnesses, it is proper for the prosecutor to ask defendant's counsel why he did not bring in the same witnesses. See also People v. Izzo, 14 Ill2d 203, 151 NE2d 329 (1958), appeal dismissed 362 US 403 (1960). The cited cases are dispositive of this contention.

■ The defendant also complains of the following remark addressed to the jury by the prosecutor in closing argument:

> "I have been on murder cases. I never heard that kind of dribble, gobbledygook. The situation here, ladies and gentlemen, is that a defendant is on trial. This is not a case—It is not a gun battle between Mr. Cohen, Mr. Passerella and myself. It is not a gun battle between Mr. Cohen and the fact he might hate policemen—"

Defense counsel immediately objected to this improper remark. The trial court ordered it stricken from the record and at the same time instructed the jury to disregard it. By its prompt action, the trial court prevented prejudicial error. See People v. Mindeman, 318 Ill 157, 149 NE 27 (1925); and People v. Henry, 68 Ill App2d 48, 214 NE2d 550 (1966).

Lastly, the defendant contends that the trial court committed prejudicial error in its failure to instruct the jury that the alleged verbal admissions of the defendant should have been received with caution. Such admissions might support a theft conviction. However, the jury, in convicting the defendant only of criminal trespass to vehicle, chose either to disbelieve the content of the defendant's alleged statement or to believe the testimony of the defendant at trial in which he denied making any oral confession. Thus, by its verdict, the jury did, in fact,

receive the alleged verbal admissions of the defendant with caution.

There is sufficient evidence in the record, independent of the alleged oral confession of the defendant, to support his conviction for criminal trespass to vehicle. The testimony of the vehicle's owner and of the arresting officer establish that the auto was entered knowingly without the owner's authority and that the defendant was driving it when stopped by the police. Accordingly, the judgment of the trial court is affirmed.

Judgment affirmed.

BURKE, P. J. and McNAMARA, J., concur.