THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLARENCE BARNEY, Defendant-Appellant.

First District (4th Division)   No. 80—2321

Opinion filed December 16, 1982.—Rehearing denied January 20, 1983.

Steven Clark and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Shapiro, and David A. Baitman, Assistant State's Attorneys, of

counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant, Clarence Barney, was found guilty of murder (Ill. Rev. Stat. 1979, ch. 38, par. 9—1) and armed violence (Ill. Rev. Stat. 1979, ch. 38, pars. 33A—1 through 33A—3). Defendant was sentenced to a 30-year term of imprisonment for murder. No sentence was imposed for the armed violence conviction. Defendant appeals his conviction, arguing that (1) he was deprived of his right to have the jury determine whether he was guilty or innocent of voluntary manslaughter when the trial judge told the jury, in response to its inquiry during deliberations, that it need not reach a verdict on voluntary manslaughter if it found defendant guilty of murder; (2) the State improperly shifted the burden of proof to him by commenting in closing argument on his failure to produce occurrence witnesses; and (3) the trial judge improperly considered a factor in aggravation and refused to consider another factor in mitigation at sentencing.

The State argued additionally that defendant also should be sentenced on his armed violence conviction. The State abandoned that claim, however, in view of the recent Illinois Supreme Court holding in *People v. Donaldson* (1982), 91 Ill. 2d 164, 170, 435 N.E.2d 477, 479, that "multiple convictions for both armed violence and the underlying felony cannot stand where a single physical act is the basis for both charges."

We affirm defendant's conviction and sentence for murder and vacate his conviction for armed violence.

FACTS

On October 22, 1979, four men were standing in the lobby of the Chicago Housing Authority building at 3653 South Federal Street, Chicago, Illinois. The building has a separate entrance and lobby at 3651 South Federal. The four men in the lobby were Eugene Hoskins, Earl Willis, Robert Smith, who was the murder victim, and Gerald Spratlin, who was stabbed and wounded. Robert Smith recently had moved from Mississippi to Chicago and was living with his sister and her family at 3651 South Federal.

At about 10 p.m., defendant entered the lobby and spoke to Hoskins about money with which to buy marijuana. These two began to argue. Testimony from Spratlin and Willis indicated that defendant thought Hoskins owed him $5, and Hoskins said he had no money. Defendant left and walked into the lobby at 3651 South Federal; a

few minutes later the four others followed. When they entered, several people were standing in the lobby along with defendant.

Defendant and Hoskins resumed their argument. After a few minutes defendant left the lobby and went upstairs. He returned in about five minutes and again asked Hoskins for the money; Hoskins repeated that he did not have it. Spratlin and Willis testified that defendant, who was angry, said, "Well, I got something for you all." Defendant struck Spratlin on the shoulder and grabbed Smith by the neck, pushed him into a flower box, and struck him in the chest. Spratlin picked up a bottle and tried to hit defendant with it, but could not because of pain in his arm. Both Spratlin and Willis ran out of the building. Defendant ran after Spratlin but did not catch him. Spratlin then went to Hoskins' apartment, where he discovered a knife wound in his shoulder. He went to a hospital for treatment.

Tinsel Wince, Smith's sister, testified that Smith, who was 18 years old, had lived with her for two weeks before he was killed. Wince's daughter, Treva Smith, testified that the night of October 22 Smith came into their apartment with blood on his jacket and blood coming from his mouth. He went into the bathroom and locked the door. When she heard him "growling" she woke her mother, who told Smith to open the door. He said he could not, but managed to open the door and then fell. He told Wince he had been stabbed but did not know the name of the fellow who did it. Wince called an ambulance, which took Smith to the hospital, where he died. A Cook County deputy medical examiner testified that Smith died of a stab wound to the heart.

Defendant testified that at 7 p.m. on October 22, 1979, he gave Hoskins $5 to buy marijuana, but received neither the marijuana nor a refund of the $5. Later that night in the lobby he talked to Hoskins, who said he did not have the money. Hoskins left, and defendant began to talk to Spratlin and Smith. During their conversation, Hoskins returned. Then, defendant testified, Smith struck him from behind and Hoskins also struck him. Spratlin was standing in front of defendant with a bottle in his hand. Defendant said that he pulled out a knife to defend himself and stabbed Spratlin and Smith with it. Defendant asserted that he then went to a friend's apartment.

Defendant was arrested at the friend's apartment at about 3 a.m. He showed the police where the knife with which Smith and Spratlin had been stabbed was hidden in some bushes. Defendant was taken to the police station; two investigators read him his rights and then questioned him. Defendant told them he had used the knife to defend himself. The investigator who testified said that he saw no bruises,

cuts, swelling, or blood on defendant.

After closing arguments the trial judge instructed the jury on the proof necessary to sustain the charges of both murder and voluntary manslaughter. During its deliberations, the jury sent the trial judge a note asking, "If we find Mr. Barney guilty of murder, do we also reach a verdict on voluntary manslaughter? and vice versa?" The judge simply answered no to both questions. Shortly thereafter, the jury reached verdicts finding defendant guilty of murder and armed violence.

A sentencing hearing was held on August 21, 1980, at which factors in aggravation and mitigation were presented. Although the presentence report indicated that defendant had no history of health problems and had never received psychiatric treatment, defense counsel claimed that defendant had been hospitalized in Tinley Park Mental Health Center in September 1979. The trial judge found it conclusive that after the trial defendant had been found fit for sentencing; he sentenced defendant to 30 years' imprisonment for murder. No sentence was imposed for armed violence.

OPINION

## I

Defendant's first argument for reversal is that the trial judge's response to the questions asked by the jury "was tantamount to failing to instruct the jury as to the offense of voluntary manslaughter ***." We disagree. The jury was properly instructed by the trial court on murder and on voluntary manslaughter, and was given verdict forms covering findings of guilty and not guilty of both murder and voluntary manslaughter. As noted, during its deliberations the jury sent the trial judge a note asking, "If we find Mr. Barney guilty of murder, do we also reach a verdict on voluntary manslaughter? and vice versa?" The trial judge answered no to both of these questions without further comment. Shortly thereafter, the jury returned verdicts finding defendant guilty of murder and armed violence. Neither verdict form, guilty or not guilty, was returned for voluntary manslaughter.

Defendant argues that, while the trial judge was correct to respond to the jury's question on a point of law (see, e.g., People v. Morris (1980), 81 Ill. App. 3d 288, 401 N.E.2d 284), the response constituted prejudicial error because it "effectively prevented the jury from finding *** [defendant] guilty of the lesser included offense of voluntary manslaughter." Defendant concedes that the trial judge did

not by his one-word responses direct the jury to consider the murder verdict first. However, defendant reasons, manslaughter is established by proof of an additional, less culpable mental state than that required to prove murder, rather than by proof of fewer than all of the elements of the greater offense, which is required for conviction of the typical lesser included offense.[1] Therefore, defendant argues, the trial judge's response allowed the jury to find defendant guilty of murder without going on to decide whether there existed mitigating circumstances that would reduce defendant's offense to voluntary manslaughter, the effect of which was the same as failing to give the voluntary manslaughter instruction in the first place.

We initially note that defendant is correct in assuming that if there is evidence in the record that would, if believed by the jury, reduce the offense of murder to manslaughter, an instruction defining manslaughter should be given. (*People v. Lockett* (1980), 82 Ill. 2d 546, 413 N.E.2d 378; *People v. Simpson* (1978), 74 Ill. 2d 497, 384 N.E.2d 373; *People v. Johnson* (1971), 1 Ill. App. 3d 433, 274 N.E.2d 168.) In such a situation, failure of the trial court to give a manslaughter instruction would be reversible error. (*People v. Guthrie* (1970), 123 Ill. App. 2d 407, 258 N.E.2d 802.) Because correct and complete instructions on voluntary manslaughter were given in this case, defendant's claim of error is premised on his theory that the subsequent questions and answers operated to negate the instructions given. Defendant relies primarily on this court's decision in *People v. Pastorino* (1980), 90 Ill. App. 3d 921, 414 N.E.2d 54, to support his claim that a "situation *** analogous to one in which the judge failed to instruct the jury on voluntary manslaughter" (90 Ill. App. 3d 921, 925, 414 N.E.2d 54, 58) exists in this case and constitutes reversible error.

We find defendant's argument unpersuasive. Defendant's reliance on the *Pastorino* decision is inappropriate. First, the facts in *Pastorino* are significantly different from the facts in the case at bar. The trial judge in *Pastorino* made comparatively lengthy remarks, specifically instructing the jury to consider the murder verdict first and to consider voluntary manslaughter only if it found the defendant not guilty of murder. He also told the jury, "[I]f you find her guilty of murder, then you do not consider voluntary manslaughter." In contrast, the trial judge in the instant case answered each of the jury's alternative questions with a single word.

Further, the question here was not whether the jury should *con-*

---

[1]The additional mental state claimed by this defendant is the unreasonable belief that self-defense was necessary. See Ill. Rev. Stat. 1979, ch. 38, par. 9—2(b).

*sider* voluntary manslaughter, it was whether the jury should *reach a verdict* on voluntary manslaughter. The trial judge in no way suggested that either murder or manslaughter should be omitted from consideration; he merely stated correctly that a finding of guilty of either crime would render a verdict on the other unnecessary. The logical inference from the questions asked and answered in this case is that the jury was questioning only whether it should complete verdict forms for both murder and manslaughter, and not whether it should omit consideration of defendant's guilt or innocence of one of the crimes. This inference is supported not only by the plain language of the questions, but also by the fact that the jury returned neither manslaughter verdict form, having found defendant guilty of murder. In addition, there is nothing in the record to support defendant's claim that the jury failed to consider defendant's guilt of the crime of manslaughter. "We must assume that jurors do not fall short of their constitutional functions and [that they do] follow the instructions of the trial judge." *People v. Jenkins* (1977), 69 Ill. 2d 61, 66, 370 N.E.2d 532, 534.

Another reason why defendant's reliance on the *Pastorino* decision is misplaced is that the decision has been reversed by the Illinois Supreme Court. (*People v. Pastorino* (1982), 91 Ill. 2d 178, 435 N.E.2d 1144.) The supreme court held that the alleged error in the instructions had been waived by failure of the defendant to object at the proper time, and that the evidence that the defendant was entitled to a voluntary manslaughter instruction was insufficient to prompt the court to look past the lack of objection. Defendant argues that the reasoning of the appellate opinion nevertheless supports his position because, in reversing, the supreme court "did not sanction an instruction to a jury that it need not consider whether a defendant has been proven guilty of voluntary manslaughter if it agrees that he has been proved guilty of murder." This argument begs the question because, as we have pointed out, the trial judge in the case at bar did not instruct the jury that it need not consider whether defendant had committed voluntary manslaughter.

■ Additionally, we find the theoretical basis for defendant's argument to be mistaken. Defendant maintains that to find an accused guilty of voluntary manslaughter, a jury must first find him guilty of murder, and then go on to find an additional less culpable mental state that mitigates the crime to voluntary manslaughter. "[M]anslaughter differs from the classical [*sic*] lesser included offense," says defendant, "in that it is not established by proof of less than all of the elements of the greater offense *** ." This is simply not the case. The

difference between murder and manslaughter is the absence of malice or intent to kill as a necessary element of manslaughter. (*People v. Jones* (1943), 384 Ill. 407, 51 N.E.2d 543; *People v. Scott* (1970), 123 Ill. App. 2d 107, 259 N.E.2d 594.) The crime of manslaughter is embraced in a charge of murder, and where homicide is proved but proof of the requisite malice is lacking, a conviction for manslaughter is proper. (*People v. Wiggins* (1957), 12 Ill. 2d 418, 147 N.E.2d 80.) Thus, defendant's argument that the jury, after finding him guilty of murder, was prevented from finding the additional element necessary to reduce defendant's offense to manslaughter is without merit, since finding an additional element is not the manner in which a homicide is found to be manslaughter rather than murder. Accordingly, we hold that defendant was not deprived of his right to have the jury consider whether he was guilty of voluntary manslaughter.

## II

Defendant's second argument is that the State improperly shifted the burden of proof to defendant by commenting in closing argument on defendant's failure to present any witnesses other than the defendant. The State argued as follows:

"Consider that, the tactics that were used in this case. Now, Mr. Morrissey [defense counsel] went out to the building there on January 18 and he went out there with two investigators.

They were going to investigate this case from top to bottom. There were other people there at the elevator there when supposedly when this happened. You don't think he talked to everybody over there if he could get anybody to say anything on behalf of him.

Defense counsel: Objection, he is transferring the burden to the defense.

The court: Overruled.

The State: He said he is the one who went out there and talked to everyone. Who testified on behalf of defendant? Nobody but the defendant because there was nobody to say anything for him because he knows what he did."

Defendant argues that this statement implied that defendant had the burden of producing witnesses to corroborate his testimony, which conflicted with his right to be presumed innocent. We disagree.

The State argues that defendant's objection was waived by failure to raise it at trial or in a post-trial motion. (See *People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739; *People v. Killebrew* (1973), 55 Ill. 2d 337, 303 N.E.2d 377.) The State points out that the objection

during trial quoted above was made before the State commented that defendant had not called any witnesses on his behalf. No objection was made to the specific remarks now complained of, either at the time they were made or in the post-trial motion. The State also argues persuasively that this is not a proper case for application of the plain error rule (87 Ill. 2d R. 615(a)) because, in light of the overwhelming proof of defendant's guilt, the remark did not cause substantial prejudice to defendant.

It is true, however, that defense counsel did object to "transferring the burden of proof," and may have felt it was unnecessary to renew the objection following the judge's adverse ruling. For this reason, we think it is appropriate to examine additional reasons why the State's comment did not constitute reversible error.

■ The failure of the witnesses in question to testify was first commented on by defense counsel in his closing argument:

"[T]here are some other witnesses to this thing supposedly, too. Remember Willis and Spratlin, they said well 3651 Federal, who was there. There were people waiting for the elevators. A lot of people hanging around the lobby.

It would be very nice if somebody who testified for the State in this case wasn't tainted, wasn't tainted by prejudice or bias. Where are they? Where are those people that were supposed to be in the lobby?"

A defendant may not claim he has been prejudiced by comments made by the State that were invited or provoked by defense counsel. (*People v. Randall* (1980), 84 Ill. App. 3d 888, 405 N.E.2d 1269; *People v. Johnson* (1968), 102 Ill. App. 2d 443, 243 N.E.2d 310.) The remarks by defense counsel quoted above clearly made the subject of the absence of the other people in the lobby at the time of the stabbing a fair topic for comment by the State.

Furthermore, a prosecutor has wide latitude in closing argument, and the trial court's determination of propriety of the argument will not be reversed on appeal absent a clear abuse of discretion or substantial prejudice to the defendant. (*People v. Richard* (1980), 88 Ill. App. 3d 247, 410 N.E.2d 459.) Because defense counsel invited comment on the absent witnesses, we find no abuse of discretion in the trial judge's ruling. Because the evidence presented at trial proved defendant's guilt beyond a reasonable doubt, there is no reason to believe the comment influenced the jury's verdict.

Finally, the trial judge instructed the jury that closing arguments are not evidence, and that it should disregard any statements that were not based on the evidence. Where such an instruction is given,

even improper closing arguments are not necessarily prejudicial. (*People v. Redmond* (1979), 73 Ill. App. 3d 160, 390 N.E.2d 1364.) Such an instruction is considered to cure any potential error that might result were it not given because jurors are assumed to follow the instructions given them. (See *People v. Jenkins* (1977), 69 Ill. 2d 61, 370 N.E.2d 532.) For all of the above reasons, we find that no prejudicial error occurred in the State's closing argument.

## III

Defendant's final claim of error is that he was deprived of his right to an adequate sentencing hearing because the trial judge improperly considered in aggravation a factor necessarily implicit in every murder and refused to consider in mitigation evidence of defendant's mental illness. Defendant claims that because "the legislature has already considered factors necessarily implicit in the offense in establishing the range of penalties for the offense, those same factors cannot be utilized again by the sentencing judge in aggravation to justify imposition of a more severe sentence than might otherwise be imposed."

As required by the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1(c)), the trial judge specified for the record the particular evidence, information, and factors in aggravation and mitigation that led to his sentencing determination as follows:

"The Court has considered the arguments of counsel and has read the pre-sentence reports and recalls the evidence in this case that there was a very simple—what began as a simple discussion developed into an argument about five dollars, and that no one except of the four men involved—four or five—except the defendant became over emotional or enraged about the whole thing. The whole matter was of short duration, but the defendant left and returned, and upon returning, for whatever motives that he had, he suddenly and violently attacked with a knife and stabbed and killed the victim in this case, a young man, who had the least to do with it. When I say the least, apparently nothing to do with the whole matter, Robert Smith. And whatever provoked this kind of violence that took the life of Robert Smith was one thing, to say that this defendant that has a limited record, but balanced against the fact that he eliminated from life on earth Robert Smith, why it is just outbalanced. And the Court finds everything considered, all of these things, a proper sentence in this case to be a term of thirty years in the penitentiary system of the Illinois Department of

Corrections, and Clarence Barney is so sentenced."
Defendant assumes that the trial judge imposed a longer sentence than he otherwise would have because his statement referred to Smith's death. We think this assumption is unwarranted, since other factors that reasonably could be considered aggravating factors also were specified: the defendant left after becoming enraged, but then returned and suddenly stabbed his victim, a young man who had nothing to do with the argument about the $5.

We also find defendant's understanding of the nature and intended application of the Illinois determinate sentencing statute to be mistaken. Defendant seems to assume that any sentence longer than the minimum, even though it be within the range the statute provides, is an extended term. In fact, the imposition of a sentence of any length within the range provided for the class of the crime of which defendant was convicted is a decision committed by the statute to the discretion of the sentencing court. The statute imposes no requirement that the minimum sentence be imposed in the absence of aggravating factors. The requirement of section 5—4—1(c) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1(c)) that the judge specify on the record the factors that led to his sentencing determination was not intended to be a trap for the sentencing judge. It is unrealistic to suggest that the judge sentencing a convicted murderer must avoid mentioning the fact that someone has died or risk committing reversible error.

We do not think that the reasoning of *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906, conflicts with this analysis. In the two consolidated *Conover* cases, one defendant had received one year less than the maximum permissible sentence for burglary and one had received the maximum sentence for theft. *Conover* held that section 5—5—3.2(a)(2) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)(2)) (receipt of compensation for committing the offense) is inapplicable where defendant received compensation by sharing in the proceeds of crime, and may be considered a factor in aggravation only when one is remunerated to commit an offense. In other words, a factor implicit in the crime itself should not be used as an aggravating factor at sentencing.

In an unfortunately vague piece of *dictum,* the *Conover* court explained that the legislature considered the factors involved in the crimes when it statutorily established the range of penalties to be imposed, and if it had intended a factor to "be utilized again to impose *a more severe penalty* for those offenses, such intent would be more clearly expressed." (Emphasis added.) (*People v. Conover* (1981), 84

Ill. 2d 400, 405, 419 N.E.2d 906, 909.) This *dictum* mirrors the language of section 5—5—3.2(a): "The following factors *** *may* be considered by the court as reasons to impose a *more severe sentence* under Section 5—8—1." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a).) The language of this statute is permissive rather than mandatory, comparative rather than absolute. Read together with section 5—8—1, its import clearly is that the specified factors may prompt the imposition of a longer sentence within the range provided by section 5—8—1. Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1.

■ Perhaps because the *Conover* defendants had not received extended term sentences, and because the opinion fails to specify what a more severe penalty is measured against in its severity, defendant assumes that any sentence longer than 20 years is impermissible if it is based on a factor implicit in murder. We do not believe this is a valid interpretation of *Conover*. It is far more logical to read that opinion to say that it is impermissible to impose a sentence more severe than the sentence that would have been imposed if the impermissible factor had not been considered. Given the language of the applicable statutes, that sentence could be any number of years within the range of penalties provided for each class of felony. Section 5—8—2(a) provides that "[a] judge shall not sentence an offender to a term of imprisonment in excess of the *maximum* sentence authorized by Section 5—8—1 *** unless the factors in aggravation set forth in paragraph (b) of Section 5—5—3.2 were found to be present." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—2(a).) Obviously, then, a sentence not in excess of the maximum authorized may be imposed in the absence of such aggravating factors.

■ An impermissible factor was explicitly considered in aggravation in *Conover*. Because one defendant received the maximum and one only one year less than the maximum permissible sentence, the supreme court could not determine how much weight the factor was accorded, and therefore remanded the cases for reconsideration of the sentences. In the case at bar the defendant received 10 years less than the maximum permissible sentence, and we do not believe the record indicates that an impermissible factor contributed to the sentencing decision.

■ Finally, defendant's claim that his mental illness should have been considered in mitigation is also unpersuasive. There is no evidence in the record that defendant had ever been diagnosed as mentally ill or received psychiatric treatment. Defendant was examined by the Psychiatric Institute of the circuit court of Cook County and found to have been sane at the time of the murder, fit for trial, and

fit for sentencing. " '[T]he trial judge's decisions in regard to sentencing are entitled to great deference and weight.' " (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492-93, 431 N.E.2d 344, 348-49, quoting *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.) We find no merit in defendant's arguments that the trial judge's determination is not entitled to such deference in this case.

For all of the reasons discussed, defendant's conviction and sentence for murder are affirmed. His conviction for armed violence is vacated.

Affirmed in part; vacated in part.

JIGANTI and ROMITI, JJ., concur.