THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARRELL MAJOR, Defendant-Appellant.

First District (5th Division)   No. 1—90—2591

Opinion filed March 26, 1993.

Rita A. Fry, Public Defender, of Chicago (Tina Liebling, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Eileen O'Neill, and Clare Wesolik, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE GORDON delivered the opinion of the court:

Defendant was convicted of first degree murder following a bench trial and was sentenced to 30 years in the Illinois Department of Corrections. On appeal, defendant alleges that his conviction should be reversed for the following reasons: (1) the trial judge improperly admitted certain evidence and viewed all of the evidence in the light most favorable to the prosecution; (2) the trial judge erred in failing to consider whether there was a mitigating factor present which would reduce the offense to second degree murder; (3) the trial judge erred when he considered a factor inherent in the offense, that the victim died, in sentencing defendant; and (4) that the Illinois murder statute is unconstitutional.

FACTS

Defendant, Darrell Major, was indicted for first degree murder and armed violence in connection with the death of Maurice Guider. The defendant waived his right to a jury trial, and a bench trial was held at which the following testimony was heard.

Patricia Guider, the victim's sister and defendant's girl friend, testified that on Sunday, April 23, 1989, she was at home watching television. At 11:30 p.m., defendant rang her doorbell and she let him in. She stated that she then received a phone call from an ex-boyfriend which upset defendant and started an argument between them. Patricia stated that defendant told her to call her ex-boyfriend and tell him to stop calling. She refused, their argument continued and eventually she left the apartment and began to walk down the block to get some air with defendant following her. She returned to the building in which she resided and rang the doorbell of her other brother, Dennis Guider, who lived in a basement apartment in that building. After he let them into the building, she and defendant began to argue again.

She testified that after about five minutes of arguing, her brother Maurice, the victim, came upstairs and asked defendant to talk to him for a second. Standing face to face, the victim asked defendant why he and Patricia kept arguing. Patricia stated that defendant told her to tell her brother to get out of his face. Defendant then began walking towards her, as did the victim. She testified that defendant reached into his trench coat pocket, pulled out a gun, and fired at Maurice, striking him in the eye. Patricia said that when defendant shot the victim, they were standing about five feet apart. Her brother's arms were at his side and he did not have anything in his hands when he was shot. She testified that her brother did not own a gun.

On cross-examination, she admitted that she was romantically involved with the defendant, but stated that she did not know that he was married at the time. She acknowledged that the victim and defendant knew each other for approximately 1½ years and that they got along well. She denied that the victim had been drinking on the night of the incident. Patricia also denied telling the officers at the scene that Maurice came towards the defendant immediately prior to the shooting.

Detective Nick Crescenzo testified that on the night of the incident he arrived at the Guider home. He and his partner searched the area for weapons and did not find any.

A stipulation was entered that a toxicologist report would show that the victim had a blood-alcohol level of 109 milligrams per deciliter.

The defense also called Detective Crescenzo, who testified that Patricia Guider told him that Maurice was walking toward defendant when defendant pulled out a gun and shot the victim at point-blank range. A stipulation was offered at this point that another police offi-

cer, L.H. Smith, would state that Patricia Guider told him the same thing on the night of the shooting.

Darrell Major, the defendant, testified that at the time of the incident he worked as a security guard at a hospital and was married. He had known and had been dating Patricia Guider for approximately 1½ years and had told her on several occasions that he was married.

On April 23, 1989, defendant went to Guider's and rang the bell. At this point, Maurice Guider, the victim, yelled at defendant from a van parked in front of the house. He went upstairs and after Patricia received a call from an ex-boyfriend, they began to argue over her contact with an ex-boyfriend and the fact that defendant was married.

Defendant stated that he noticed Maurice in the apartment and that he motioned for defendant to come into the living room. Maurice then rushed at the defendant, grabbed him by the arm, and dragged him into the living room. Defendant testified that he smelled alcohol on Maurice and that he was scared, indicating that Maurice was double his size. Defendant began screaming for Maurice to let him go, telling Maurice that he was drunk. Defendant testified that Maurice then shoved him into the hallway. He noticed that Maurice kept one hand concealed in his jogging suit. They continued to argue and then Maurice started to take his hand out of his jogging suit. Defendant testified that he saw the butt of a semi-automatic weapon in Maurice's hand.

Defendant stated that Maurice then grabbed him. At this point, defendant took a gun from his coat pocket and shot Maurice, who was standing only about one foot away. Defendant fled by car and eventually threw the gun onto the roof of a grocery store.

Dennis Guider was called by the State as a rebuttal witness. He testified that he never saw a gun near the victim's body at the time of the incident. Over objection, he testified that his brother did not own a gun. Patricia Guider was also called in rebuttal and testified that on the night of the incident she did not see Maurice with a gun. Over objection, she said that she had never seen him with a gun.

During closing arguments, defense counsel argued that Patricia Guider's story that the victim and defendant were five feet apart when the shot was fired was inconsistent with the fact that stippling, a residue left by the gunshot, was found on the entrance wound indicating, without objection from the State, that the gun was fired from a distance of no more than two feet from the victim. The judge responded that just because the two individuals were five feet apart did not mean that the gun was five feet from the victim when the shot was fired. The trial judge indicated that the defendant's arm could

have been outstretched when he fired the shot. Defense counsel responded that there was no testimony to that fact at trial.

Defendant was subsequently found guilty of first degree murder and sentenced to 30 years in the Illinois Department of Corrections. In sentencing defendant, the trial judge stated:

> "This Court has listened to the evidence here and in this sentencing hearing the Defendant has had a past exemplary record, as a man appears in a fit of temper and jealousy because he thought his girl friend hadn't severed her relations with a former lover or maybe even then a present lover along with him. I don't know. Another man lost his life, shot in the eye. A bigger, taller man shot in the eye. All the witnesses here say to me to have mercy for you. I am merciful, extremely so. It's just too bad that neither I nor any man on this earth can extend any mercy to Maurice Guider, a man whose life you took. Senseless. Needless."

OPINION

On appeal, defendant contends that (1) he was denied a fair trial because the trial court improperly admitted evidence that the victim never carried a gun and also improperly viewed the evidence in the light most favorable to the State; (2) that the trial court erred when it failed to consider mitigating evidence which would reduce the defendant's offense to second degree murder because it misunderstood the relationship between self-defense and the second prong of the second degree murder statute; (3) that the trial court committed reversible error by improperly considering a factor inherent in the offense, that the victim died, when it sentenced defendant; and (4) the Illinois murder statute violates the due process guarantees of the United States Constitution and the Illinois Constitution.

■ Defendant first claims that he was denied a fair trial when the trial court improperly considered the rebuttal testimony that the victim did not own a gun and that he never carried a gun. The State correctly points out that this issue was not raised in defendant's posttrial motion and is consequently waived. *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

However, even if not waived, the admission of this testimony does not constitute reversible error. Defendant claims that the rebuttal testimony did not tend to disprove or negate his testimony, but only allowed the improper inference that the victim was a peaceful man. Defendant cites *People v. Goodwin* (1981), 98 Ill. App. 3d 753, 424 N.E.2d 429, for the proposition that the defendant was entitled to a

trial where the judge did not have "a better picture of the deceased than was allowed by law."

We disagree with the contention that the testimony as to the victim's ownership and possession of the gun was improper rebuttal. In this case, the defense relied primarily upon the contention that the victim was holding a gun. Defendant testified to this effect. The testimony offered in rebuttal by the prosecution contradicted defendant's testimony that he killed the victim because he saw the victim pull a gun on him. In this respect, the evidence is not designed to address the victim's character as a peaceful man as was the case in *Goodwin*, but rather to help establish whether or not defendant owned or ever carried a gun. See *People v. Gardner* (1977), 47 Ill. App. 3d 529, 362 N.E.2d 14.

Moreover, even if error were present in the admission of the evidence, it was harmless. While the offending testimony allowed the inference that the victim was not carrying a gun at the time of the incident, there was direct testimony from Patricia Guider that the victim was not carrying a gun on that night. There was testimony from both Patricia and Dennis Guider that they did not see their brother with a gun on the night of the incident. This testimony was supported by Detective Crescenzo, who stated that he and his partner searched the apartment for weapons on the night of the incident and did not find any. As such, the only possible adverse effect that this testimony could have had was to further reinforce the direct testimony which was already present in the record. Therefore, any error which may have occurred as a result of the trial judge's admission of the rebuttal testimony was harmless. Defendant's contention that the trial judge improperly inferred that the victim was a peaceful man and defendant's innuendo that the judge was unduly sympathetic to the victim as a result of that inference is wholly speculative and unwarranted. (*People v. Puhl* (1991), 211 Ill. App. 3d 457, 472, 570 N.E.2d 447 ("[i]n a bench trial as opposed to a jury trial, there is a presumption that the trial judge considered only competent evidence, and that presumption will be overturned only where this is an affirmative showing that the trial considered incompetent evidence").) Moreover, it is common sense as well as common knowledge that the mere failure to carry a gun would not suffice to establish a person as peaceful or otherwise nonviolent.

■ Defendant also argues that the attempt by the judge to reconcile the disparity between Patricia Guider's testimony concerning the distance between the victim and defendant when the shot was fired and the evidence of the stippling around the entrance wound was im-

proper. Defendant urges that in attempting to resolve this disparity by hypothesizing that defendant's arm was extended when he fired the shot, the trial judge abandoned the reasonable doubt standard and was improperly viewing the evidence in the light most favorable to the prosecution.

It is the function of the trier of fact to determine the credibility of witnesses and the inferences which can be drawn from the evidence presented. (*People v. Byron* (1987), 116 Ill. 2d 81, 506 N.E.2d 1247.) It is axiomatic that the fact finder's role in the criminal justice process is to resolve conflicts in the evidence presented. (*People v. Purnell* (1984), 126 Ill. App. 3d 608, 467 N.E.2d 1160.) Where evidence presented is capable of presenting conflicting inferences, the matter is best left to the trier of fact for resolution. (*People v. Campbell* (1992), 146 Ill. 2d 363, 586 N.E.2d 1261.) A fact finder's determination on such a question, like how far away defendant was from the victim when he fired the shot, will be overturned only "where the evidence is so palpably contrary to the verdict or judgment that it is unreasonable, improbable or unsatisfactory and, thus, creates a reasonable doubt of guilt." (*People v. Pintos* (1988), 172 Ill. App. 3d 1096, 1101, 527 N.E.2d 312.) Consequently, we must assess the correctness of the trial judge's decision in this light.

In this case, Patricia Guider testified that the victim was standing five feet away from defendant when he was shot. The physical evidence indicates that the shot was fired from a closer distance. The trial judge's explanation of the apparent discrepancy is well within the bounds of inference allowed to the trier of fact. Moreover, even where not completely reconcilable, mere conflicting evidence is not a sufficient ground for reversal, and a verdict will not be disturbed unless the evidence is so improbable that it raises doubts as to the defendant's guilt. (*People v. Buchanan* (1991), 211 Ill. App. 3d 305, 570 N.E.2d 344; *People v. Brandon* (1990), 197 Ill. App. 3d 866, 557 N.E.2d 1264.) The potential conflict presented by defendant does not reach this level. Even if the witness erred as to the distance, it would not necessarily vitiate the remainder of her testimony.

In asserting that the trial judge disavowed the reasonable doubt standard, defendant contends that the conclusions of the trial judge are manifestly less plausible than those of the defense. In support, defendant asserts that the evidence is very close. Defendant also notes that the evidence of the stippling is more consistent with his claim of self-defense than the explanation given by the trial judge and that his version of the events of that night is more internally consistent than Patricia Guider's. He points to the fact that Patricia Guider

was impeached by a prior statement as to whether the victim was walking toward the defendant when he was shot. He further points to the fact her testimony that the victim was sober and five feet from defendant when shot was contradicted by the physical evidence that the victim had been drinking and was shot from less than two feet away.

A conviction will not be reversed on appeal on the basis of insufficient evidence unless " 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis omitted.) (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 461, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) Here, the eyewitness testimony of Patricia Guider which described in detail the events as they unfolded is sufficient to support the verdict if believed by the trier of fact. (*People v. Ahern* (1983), 119 Ill. App. 3d 532, 456 N.E.2d 852; see also *People v. Bradford* (1989), 187 Ill. App. 3d 903, 916-17, 543 N.E.2d 918 ("[m]inor inconsistencies in testimony do not constitute grounds for reversal of a criminal conviction [citations], and the effect of minor testimonial discrepancies upon the credibility of the witnesses is a matter for the trial court's determination").) Nor should the defendant's testimony be considered controlling merely because it is internally consistent. Many factors enter into assessing the credibility of witnesses and, considering our position as a reviewing court which has not had the benefit of observing these witnesses, we would be extremely reluctant to disturb the findings of the trier of fact assessing the credibility of those witnesses. (See *People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313.) We find no error in the trial court's resolution of this issue and no indication that the trial judge applied an incorrect standard in finding defendant guilty.

■ Defendant's next contention is that the trial court misunderstood the relationship between self-defense and the second prong of the second degree murder statute, which requires that "[a]t the time of the killing [defendant] believes the circumstances to be such that, if they existed, would justify or exonerate the killing *** but his belief is unreasonable." (Ill. Rev. Stat. 1989, ch. 38, par. 9—2.) Defendant argues that as a result, the trial judge failed to consider a mitigating factor which would reduce the offense to second degree murder. According to defendant, the comments of the trial judge at the post-trial hearings indicate that he did not consider whether mitigating factors were present to reduce the charge to second degree murder because he thought that his rejection of the self-defense defense foreclosed any such reduction.

In reviewing a bench trial, there is a presumption that the trial judge follows the law unless the record shows otherwise. (*People v. Stewart* (1970), 130 Ill. App. 2d 623, 264 N.E.2d 557.) When questioned on the point at the post-trial hearing, the trial judge indicated that although he did not specifically announce his findings for the record, he nevertheless considered and rejected a reduction of the charge to second degree murder. In so doing, the trial judge unequivocally stated, "I found there was no second degree murder." After reviewing the record before us, and in light of the trial judge's express assertion, we have not found sufficient grounds from which to conclude that the trial court failed to properly consider the "imperfect self-defense prong" of second degree murder.

■ Defendant's third contention on appeal is that the 30-year sentence he received for first degree murder was excessive because the trial judge improperly considered a factor inherent in the offense, that the victim died, when sentencing him. In response, the State denies any error and in the alternative contends that defendant waived any such error because he did not object below.

A defendant waives an alleged error on appeal when he fails to object at the sentencing hearing and include the allegations of error in his post-trial motion. (*People v. Murray* (1990), 201 Ill. App. 3d 573, 559 N.E.2d 174; *People v. Diaz* (1989), 189 Ill. App. 3d 473, 545 N.E.2d 399.) At the sentencing hearing here, defendant did not object when the trial court handed down the sentence or when it articulated the reasons for that sentence. The defendant also did not raise this alleged error in his post-trial motion. We therefore agree with the State that defendant has waived this issue for purposes of review.

Even if defendant had not waived this issue, we would determine that the trial court did not err in sentencing the defendant. It is well established that the trial court has considerable discretion in imposing a sentence which is within the statutory guidelines established in the Criminal Code. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) The trial judge's imposition of a sentence will not be reversed absent an abuse of discretion and such decision is cloaked with a presumption of correctness. *People v. Cabrera* (1987), 116 Ill. 2d 474, 508 N.E.2d 708; *People v. Choate* (1979), 71 Ill. App. 3d 267, 389 N.E.2d 670.

A trial court commits reversible error when it considers an element inherent in the offense when sentencing the defendant. (*People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138.) The rationale of this rule is that the legislature has already devised a certain range of punishment for the crime which is based on the crime itself as well as

the elements which comprise it. (*People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906.) Courts, however, have consistently refused to reverse a trial judge's imposition of a sentence merely because the judge mentioned an element of the offense when defendant was sentenced. See *Murray*, 201 Ill. App. 3d at 579-80; *People v. Barney* (1982), 111 Ill. App. 3d 669, 679, 444 N.E.2d 518 ("[i]t is unrealistic to suggest that the judge sentencing a convicted murderer must avoid mentioning the fact that someone has died or risk committing reversible error").

Here, the trial court did not indicate that it considered the death of the victim in aggravation, but only considered the circumstances of the crime in how it related to both mitigation and aggravation. The sentencing court can consider the force employed and the physical manner, as well as the nature of the circumstances of the offense, in which the victim's death was brought about in sentencing the defendant. (*Saldivar*, 113 Ill. 2d at 269.) Consequently, defendant's reliance on *People v. Willis* (1991), 210 Ill. App. 3d 379, 569 N.E.2d 113, where the trial court explicitly stated that it considered the death of the victim in aggravation, is unavailing. No error is committed by the mere mention of a factor inherent in the offense when imposing sentence for that offense. See *People v. Bennett* (1987), 159 Ill. App. 3d 172, 511 N.E.2d 1340; *People v. Martin* (1983), 112 Ill. App. 3d 486, 445 N.E.2d 795; *People v. Barney* (1982), 111 Ill. App. 3d 669, 444 N.E.2d 518.

We note that the 30-year sentence was 10 years over the statutory minimum established in section 5—8—1 of the Unified Code of Corrections. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1.) Defendant claims that the only possible explanation for the length of this sentence was the trial court's improper consideration of the death of the victim. We disagree. Notwithstanding defendant's contentions to the contrary, the evidence offered in mitigation does not dictate that this court reduce defendant's sentence to the 20-year minimum. The trial judge specifically acknowledged the witness' prior exemplary record and the pleas for mercy on his behalf, but given the circumstances surrounding the crime, the trial court was well within its discretion in deciding that in light of all the evidence, including that offered in mitigation, that a 30-year sentence was appropriate.

■ Finally, we reject defendant's contention that the Illinois homicide statute violates due process. The arguments presented by defendant here have been previously considered by this court and the

statute has been consistently held constitutional. (See, *e.g, People v. Collier* (1992), 228 Ill. App. 3d 159, 161, 592 N.E.2d 444 (listing "plethora of recent decisions by this court" rejecting constitutional challenges to the Illinois homicide statute); *People v. Willis* (1991), 217 Ill. App. 3d 909, 577 N.E.2d 1215 (rejecting argument that required mental states of first and second degree murder were inconsistent, stating that section 9—2 does not violate defendant's constitutional right to due process because it does not require defendant to negate an element of first degree murder); *People v. Brown* (1991), 218 Ill. App. 3d 890, 895, 578 N.E.2d 1168 (stating that defendant's argument attacking the Illinois homicide statute as violative of due process because it requires defendant to negate an element of first degree murder "confus[es] self-defense with the second degree murder's mitigating factor"); see also *People v. Reeves* (1992), 228 Ill. App. 3d 788, 593 N.E.2d 683; *People v. Wright* (1991), 218 Ill. App. 3d 764, 578 N.E.2d 1090; *People v. Gore* (1991), 212 Ill. App. 3d 984, 571 N.E.2d 1041.) In light of the ample precedent, we see no reason to consider defendant's argument further.

For the foregoing reasons, we affirm the judgment of the trial court.

Judgment affirmed.

MURRAY and McNULTY, JJ., concur.