THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RONNIE TUCKER, Defendant-Appellant.
Fifth District   No. 5—91—0416

Opinion filed June 2, 1993.

Daniel M. Kirwan and Janet Gandy Fowler, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert Haida, State's Attorney, of Belleville (Norbert J. Goetten and Stephen E. Norris, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Ronnie Tucker, was charged with first-degree murder (Ill. Rev. Stat. 1989, ch. 38, par. 9—1(a)(1)) in the shooting death of Stanley Barber. Following a jury trial in which defendant was found guilty of the offense charged, defendant was sentenced to 45 years in the Department of Corrections. On appeal, defendant contends that the trial court erred in sentencing him to 45 years in prison. In a supplemental brief, defendant further contends that the trial court committed reversible error when instructing the jury. We affirm.

## I

On August 7, 1990, defendant began drinking alcoholic beverages with his friend, Calvin Jones, at about 1 p.m. The two continued to drink until approximately 12 a.m. on August 8, 1990. Defendant was intoxicated and fell asleep on Jones' living room floor. Jones left to pick up his brother and also attempted to get more liquor. When Jones returned home, he found the victim sitting on his front porch crying. The victim wanted a ride to his girl friend's home, but Jones refused and told the victim to stay at his home. The victim declined the invitation and left on foot.

Defendant woke up shortly thereafter and asked Jones to take him to his grandmother's house. Jones agreed, and both got in Jones' car. Jones also decided to give the victim a ride and picked him up around the corner. Defendant was lying down in the back seat when Jones stopped to pick up the victim. The victim got into the front seat. Defendant and the victim began arguing. According to Jones, he was driving over a bumpy area and heard a "pop" and turned to see the victim bleeding from the head. The victim died from a gunshot wound to the head. Jones saw that defendant had a semiautomatic pistol. According to Jones, the first thing defendant said after the shooting was "Fuck that nigger." There was also some discussion between Jones and defendant that the shooting had been a mistake and that defendant had not meant to do it. Jones stopped his car, and defendant opened the front passenger door. The victim fell out of the car, and Jones and defendant left the victim on the side of the road. The two then proceeded to burn Jones' car. Defendant also burned his clothes.

Debra Jones, Anthony Jones, and Darnell Jones, relatives of Calvin Jones, all testified that defendant told them not to tell the police that he, defendant, had been at the Jones residence on the evening before the victim's murder. Based upon the foregoing evidence, defendant was convicted of first-degree murder.

A presentence investigation was conducted. The report indicated that defendant was 24 years old at the time of the murder and was unmarried. The report further indicated that defendant was previously convicted of unlawful use of a weapon, possession of cannabis, and failure to possess a firearm owner's identification (FOID) card. At the sentencing hearing, defense counsel noted that defendant just received a four-year prison sentence for unlawful possession of a controlled substance. The State recommended a 45-year prison sentence while defense counsel recommended the minimum 20-year prison sen-

tence. Defense counsel argued that the incident was not premeditated, that defendant was intoxicated at the time of the shooting, and that defendant did not deny that he was the shooter. Defendant did not take the stand in his own defense. Defendant's theory was that the shooting was an accident.

Ultimately, the trial court sentenced defendant to 45 years in the Department of Corrections and stated its reasons for the sentence as follows:

"THE COURT: All right. This Court, having due regard to the nature and circumstances of the offense and to the history, character and condition of the defendant, is of the opinion that imprisonment is not only necessary but mandated by law for the protection of the public, and that probation or discharge would deprecate the seriousness of the defendant's conduct and would, in fact, be illegal in this particular case. In reaching this decision as the basis for the Court's sentence, I find that the defendant's conduct was certainly causing the death of the individual, that the defendant has a history of prior delinquency and criminality.

MR. STURGEON [defense attorney]: Excuse me, Your Honor, he did not have any history of delinquency.

THE COURT: All right. I'll strike delinquency. Criminality, and the prior misdemeanor offenses for the possession of weapons. The Court notes that the defendant was on bail, having made bail in this particular situation, as a matter of fact, at the time of this particular offense from a prior pending charge, and he has subsequently been sentenced on that charge. The Court does not necessarily adopt the State's theory of this case that this was a premeditated offense in the sense that it was pre-planned, because I don't think that either of the parties anticipated the presence of the victim in this case at the time that it happened. And the Court takes note that the defendant was, in fact, under the influence of alcoholic liquors at the time of this offense. It certainly did not arise to the level of a defense and does not in any way excuse or tend to excuse the defendant's conduct, although it is an element of mitigation to this offense. The Court is aware and recalls the testimony and the evidence in this case of tape recordings concerning this defendant's efforts to avoid detection, his incredulity that the State had enough evidence to convict him, and does not find that the defendant is in any way repentant or was repentant for his conduct. The Court also finds and recalls the comment when

questioned by his companion of the evening stating that he should not have done this, the defendant's answer was why. His attitude conveys to this Court a callous disregard of human life and I reject your apology, sir, at this point, it's a little late in the game.

I find that society needs to be protected from you, Mr. Tucker, and accordingly I'm going to sentence you for a period of forty-five years['] incarceration to the Illinois Department of Corrections ***."

## II

Defendant first contends that the trial court erred in sentencing him to 45 years in the Department of Corrections. Specifically, defendant argues that the trial court erred in finding as a factor in aggravation that defendant's conduct caused the death of the victim because "serious harm is implicit in the crime, and cannot be considered in aggravation." (*People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138.) Defendant contends that even though he did not object to the consideration of this factor at the sentencing hearing, the issue is not waived because it is plain error pursuant to Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)). Defendant further contends that he presented clear evidence in mitigation which was not given its due consideration by the trial court. Therefore, the trial court abused its discretion in sentencing defendant to an excessive term. The State replies that the trial court properly considered the nature and circumstances of the case when it sentenced defendant. The trial court did not impose a longer sentence merely because the crime resulted in death. The trial court considered several aggravating factors as well as mitigating factors. Accordingly, the trial court's remark concerning defendant's conduct causing the death of the victim was harmless error at best. We agree with the State.

■ Supreme Court Rule 615(b)(4) grants reviewing courts the power to reduce a sentence imposed by the trial court (134 Ill. 2d R. 615(b)(4)). The rule does not address the scope of such power or the circumstances under which such a reduction would be warranted; however, the general rule established is that a sentence is a matter of judicial discretion, and absent an abuse of such discretion, the sentence may not be altered upon review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883.) In order to modify a sentence within statutory limits, it must appear to a reviewing court that the sentence imposed is a clear departure from the spirit and purpose of the fundamental law and the requirement of the constitution that the

sentence be proportionate to the nature of the offense and measure possibilities for rehabilitation. (*People v. Plantinga* (1985), 132 Ill. App. 3d 512, 522, 477 N.E.2d 1299, 1306.) Moreover, and contrary to defendant's assertions in this case, the degree of harm caused the victim "may be considered as an aggravating factor in determining the exact length of a particular sentence, *even in cases where serious bodily harm is arguably implicit in the offense for which a defendant is convicted.*" (Emphasis in original.) (*People v. Saldivar*, 113 Ill. 2d at 269, 497 N.E.2d at 1143.) *People v. Andrews* (1982), 105 Ill. App. 3d 1109, 435 N.E.2d 706, explains such a situation as follows:

"In this regard, although the consequences are identical, a defendant who tortures his victim to death should expect to receive a more severe punishment than a defendant who did not physically participate in terminating the victim's life but who is guilty of murder on the theory of accountability. Therefore, we conclude that in a conviction for murder it is not impermissible for the sentencing court to consider the force employed and the physical manner in which the victim's death was brought about." 105 Ill. App. 3d at 1113, 435 N.E.2d at 708.

In the present case, the fact that the victim died does not serve as a factor to increase defendant's sentence, and we do not believe the trial court's determination as to the length of sentence was based upon the fact that the victim died. As the State points out, it is not reversible error for a sentencing court to point out that the victim died in a murder case. "It is unrealistic to suggest that the judge sentencing a convicted murderer must avoid mentioning the fact that someone has died or risk committing reversible error." (*People v. Barney* (1982), 111 Ill. App. 3d 669, 679, 444 N.E.2d 518, 525.) Here, a review of the record shows that the trial court made a single remark about the crime resulting in the victim's death. The trial court listed factors in aggravation, including the facts that defendant had a prior history of criminality and that defendant was in no way remorseful for his actions. The trial court also properly considered factors in mitigation, such as the fact that the State had not proved that the crime was premeditated and the fact that defendant was under the influence of alcohol at the time of the murder.

The range of sentence for a conviction of first-degree murder is between 20 and 60 years' imprisonment. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1.) Here, the 45-year prison sentence was well within that range, being 15 years less than the maximum permissible sentence. After reviewing the record, we do not believe that an impermissible factor contributed to the length of defendant's sentence (*Peo-*

*ple v. Barney*, 111 Ill. App. 3d at 679-80, 444 N.E.2d at 526), nor do we believe that the trial court abused its discretion in sentencing defendant.

In a supplemental brief, defendant also contends that the trial court committed reversible error by giving the final paragraph of Illinois Pattern Jury Instructions, Criminal, No. 26.01Q (2d ed. Supp. 1989) (hereinafter IPI Criminal 2d (Supp. 1989)), which read as follows:

> "If you find the State has proved the defendant guilty of both first degree murder and involuntary manslaughter, you should select the verdict form finding the defendant guilty of first degree murder and sign it as I have stated. Under these circumstances, do not sign the verdict form finding the defendant guilty of involuntary manslaughter." IPI Criminal 2d No. 26.01Q, at 367-68 (Supp. 1989).

Defendant contends that this instruction misstates the law because first-degree murder requires a finding that a defendant acted intentionally whereas involuntary manslaughter involves a finding of a reckless mental state. The jury's finding that a defendant simultaneously acted both intentionally and recklessly is logically and legally inconsistent. (*People v. Hoffer* (1985), 106 Ill. 2d 186, 478 N.E.2d 335.) Defendant contends that even though his attorney tendered the instruction now in question, the error is not waived but should be considered as plain error. In the alternative, if plain error is not found, the defense attorney's actions in this regard amounted to ineffective assistance of counsel. We disagree.

■■ Defendant is correct that murder and involuntary manslaughter have inconsistent mental states. (*People v. Hoffer* (1985), 106 Ill. 2d 186, 478 N.E.2d 335.) *Hoffer* involved a jury trial in which the defendant was charged with murder, voluntary manslaughter, and involuntary manslaughter. The jury in that case returned verdicts finding defendant guilty of all three offenses. (106 Ill. 2d at 189, 478 N.E.2d at 337.) The *Hoffer* court deemed the mental state necessary to sustain a conviction for involuntary manslaughter to be less culpable than, and mutually inconsistent with, the mental states necessary to sustain a conviction for murder. (106 Ill. 2d at 194-95, 478 N.E.2d at 340.) The *Hoffer* court reasoned that because "the jury concluded that the defendant killed another, intentionally or knowingly (murder, voluntary manslaughter)[,] while simultaneously finding that defendant recklessly but unintentionally caused the death of the victim (involuntary manslaughter)," a new trial on all counts was required. (106 Ill. 2d at 195, 478 N.E.2d at 340.) It must be noted that *Hoffer* dealt

with murder as defined in section 9—1 of the Criminal Code of 1961 prior to enactment of the new murder provisions effective July 1, 1987. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1.) However, the subsequent offense of first-degree murder incorporated substantially all of the law previously applicable to murder, thereby making the *Hoffer* analysis applicable to the subsequent murder statute. *People v. Summers* (1990), 202 Ill. App. 3d 1, 13, 559 N.E.2d 1133, 1140.

In an attempt to resolve the problem of logically or legally inconsistent verdicts as explained in *Hoffer*, the Illinois Supreme Court Committee on Pattern Jury Instructions in Criminal Cases (Committee) extensively modified its instructions. The Committee explained that extensive modifications to instruction No. 26.01 were designed to avoid such confusion in criminal cases. (IPI Criminal 2d ch. 26.00, Introductory Note, at 317 (Supp. 1989).) Nevertheless, it has been determined that in a case such as the one presented here, where a jury is dealing with greater- and lesser-included offenses (murder and involuntary manslaughter), with the lesser-included offense having a less culpable mental state of recklessness, the last paragraph of IPI Criminal 2d No. 26.01Q (Supp. 1989), the paragraph complained of here, should not be given. *People v. Summers* (1990), 202 Ill. App. 3d 1, 559 N.E.2d 1133.

In *Summers*, the defendant was convicted by a jury of the first-degree murder of his 19-month-old stepson. The jury was instructed on both murder and involuntary manslaughter, including the last paragraph of IPI Criminal 2d No. 26.01Q (Supp. 1989), the same instruction complained of here, instructing the jury that if it found the defendant guilty of both first-degree murder and involuntary manslaughter, it should only sign the verdict finding defendant guilty of first-degree murder. The defendant argued that the instruction misstated the law, and the *Summers* court agreed, following the *Hoffer* analysis. (*Summers*, 202 Ill. App. 3d at 12, 559 N.E.2d at 1140.) The *Summers* court then noted the changes made by the Committee in light of *Hoffer* but found that the last paragraph of IPI Criminal 2d No. 26.01Q (Supp. 1989) went too far. Specifically, the *Summers* court stated:

> "The Committee's goals are laudable and it has otherwise achieved them through its promulgation of the series of instructions for IPI Criminal 2d Nos. 2.01 and 26.01 in the 1989 supplement. However, the present case provides an instance where the modifications go too far. Thus, in cases like the present one, in which the jury has before it not only greater and lesser offenses, but a lesser offense having the less culpable mental

state of recklessness, the last paragraph of IPI Criminal 2d No. 26.01Q (Supp. 1989) should *not* be given. The court's giving of that last paragraph in the present case was, therefore, error." (Emphasis in original.) (202 Ill. App. 3d at 14, 559 N.E.2d at 1141.)

We adopt the *Summers* court's reasoning as our own. Furthermore, like *Summers*, we find that the error caused by the court's giving of the last paragraph did not rise to the level of plain error. See *Summers*, 202 Ill. App. 3d at 14-16, 559 N.E.2d at 1141-43.

■ Here, defendant tendered the instruction in question, thereby waiving the error. However, an error is not waived by a defendant even if it was the defendant who caused the instruction to go to the jury, if it so affects the defendant's substantial rights that it rises to the level of plain error. (*People v. Sanders* (1984), 129 Ill. App. 3d 552, 562-63, 472 N.E.2d 1156, 1164.) The plain error rule allows a reviewing court to consider a trial error not properly preserved for review in two instances: (1) where the evidence in a criminal case is closely balanced in order to preclude the possibility that an innocent man is wrongly convicted, or (2) where the error is so fundamental and of such magnitude that the defendant was denied a fair trial. Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)); *People v. Herrett* (1990), 137 Ill. 2d 195, 209, 561 N.E.2d 1, 7-8.

As previously stated, the *Summers* court found the error in the instructions to be harmless because the trial court immediately after giving the instruction explained the proper procedure for the jury to follow; namely, if the jury found the defendant guilty of murder, it could not also find him guilty of involuntary manslaughter, or if the jury found defendant guilty of involuntary manslaughter, the jury could not also find him guilty of murder. (*Summers*, 202 Ill. App. 3d at 16, 559 N.E.2d at 1143.) The prosecutor also explained in closing argument that the offenses were mutually exclusive. (202 Ill. App. 3d at 16, 559 N.E.2d at 1143.) Moreover, the record in *Summers* contained no indication that the jury found that the State had proved the defendant guilty of both offenses. (202 Ill. App. 3d at 16, 559 N.E.2d at 1143.) Likewise, in the instant case, we believe the instructions were clarified for the jury.

Here, the prosecutor in closing argument explained the difference between an act that is knowing and intentional (murder) and an act that is reckless (involuntary manslaughter). The prosecutor asked for a verdict of guilty on first-degree murder, contending that the facts in this case showed an intentional rather than a reckless act. The defense attorney argued that the victim was accidentally shot and ex-

plained further, "[W]e're not here on murder, if we're here on anything it's involuntary manslaughter." There is nothing in this record to suggest that the jury found defendant guilty on both the murder and involuntary manslaughter charges. Contrary to *Hoffer*, where three guilty verdicts were returned, only one guilty verdict was returned here. We believe that the jury understood the difference between murder and involuntary manslaughter and that the error caused by giving the last paragraph of IPI Criminal 2d No. 26.01Q (Supp. 1989) does not rise to the level of plain error.

Defendant's final contention is that defendant's counsel rendered ineffective assistance of counsel when he offered IPI Criminal 2d No. 26.01Q (Supp. 1989). We disagree.

*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, sets forth a two-prong test to determine whether a defense counsel's performance constitutes ineffective assistance. First, a defendant must show that his counsel's performance fell below an objective standard of reasonableness. Second, a defendant must show that, but for defense counsel's error, the outcome of the trial would have been different. A court need not decide the first prong (the performance component) before analyzing the second prong (the prejudice component). (*People v. Gaines* (1984), 105 Ill. 2d 79, 92-93, 473 N.E.2d 868, 876.) In the instant case, there is overwhelming evidence of defendant's guilt. The record justifies the jury's verdict on the first-degree-murder charge. Moreover, as previously discussed, we believe the jury was adequately apprised of the law in the instructions, and we do not believe that submission of IPI Criminal 2d No. 26.01Q (Supp. 1989) *in toto* prejudiced defendant within the meaning of *Strickland*.

For the foregoing reasons, the judgment and sentence of the circuit court of St. Clair County are affirmed.

Affirmed.

CHAPMAN, P.J., and WELCH, J., concur.