SECOND DIVISION

March 31, 2003

Nos. 1-99-3503 and 1-99-3796, Consolidated

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

SHARON BURTON and LEROY LOCKE,

Defendants-Appellants.

)

)

)

)

)

)

)

)

)

Appeal from

the Circuit Court

of Cook County

No. 96 CR 4719

Honorable

John J. Moran, 

Judge Presiding.

JUSTICE CAHILL delivered the opinion of the court:

Defendants Sharon Burton and Leroy Locke were convicted of first-degree murder for the death of Burton's three-year-old daughter, Dominique Spencer.  Defendants were tried jointly by separate juries.  They were sentenced to natural life in prison. 
 This court vacated its initial decision in this consolidated appeal, entered on July 23, 2002 (
People v. Burton
, Nos. 1-99-3503 and 1-99-3796 cons. (2002) (unpublished order under Supreme Court Rule 23)), in accordance with a supervisory order issued by the Illinois Supreme Court on December 5, 2002 (
People v. Burton
, 779 N.E.2d 898 (2002)).  The supervisory order directed us to reexamine an issue in the case of Sharon Burton, No. 1-99-3503,  in light of 
People v. Pollock
, 
202 Ill. 2d 189, 780 N.E.2d 669 (2002)
.  That issue was a nonpattern jury instruction based on language in 
People v. Stanciel
, 
153 Ill. 2d 218, 606 N.E.2d 1201 (1992
).  We have reexamined the jury instruction in light of 
Pollock
 and now reverse the conviction of Sharon Burton and remand her case for a new trial.  This opinion replaces our earlier order and
 represents our resolution of all issues in both appeals.  

Defendants argue on appeal that: (1) they were denied a fair trial because of the prosecutors' prejudicial remarks during opening and closing statements; (2) their attorneys provided ineffective assistance by failing to submit a jury instruction defining recklessness and failing to object to the incorrect version of the verdict instruction; and (3) the trial court erred in imposing a natural life sentence.  Burton also argues that the nonpattern jury instruction on accountability and parental responsibility was an inaccurate statement of the law.

We reject the defendants' first and second arguments and affirm the conviction of defendant Locke.  We agree that the natural life sentences were imposed under an act declared unconstitutional by the supreme court in 
People v. Wooters
, 188 Ill. 2d 500, 722 N.E.2d 1102 (1999), and that Locke's case must be remanded for resentencing.  Under our supreme court's recent decision in 
Pollock
, 202 Ill. 2d 189, 780 N.E.2d 669, we reverse defendant Burton's conviction and sentence and remand for a new trial.  We must also address Burton's arguments to determine whether remand would subject her to double jeopardy. See 
People v. Jones
, 175 Ill. 2d 126, 134, 676 N.E.2d 646 (1997); 
People v. McDonald
, 125 Ill. 2d 182, 201, 530 N.E.2d 1351 (1988).

In January 1996, Locke and Burton lived together with three of Burton's children, six-year-old Thaddeus, three-year-old Dominique and baby Tiffany.  On January 22, 1996, Thaddeus was at his grandmother's house.  Paramedic Dennis Bixter testified that he was called to Burton and Locke's apartment on the morning of January 22.  Locke was holding Dominique.  Burton told Bixter that the child had had a seizure, vomited and lost consciousness.  Bixter examined Dominique.  She was not breathing and had no pulse.  He was told she had taken a bath, but although she appeared dry, her palms and soles were wrinkled.  Bixter noted extensive old and new injuries on Dominique.  He estimated she had been dead for two hours but gave her three rounds of cardiac drugs in an attempt to resuscitate her.  Bixter told police, in Burton's presence, that he suspected child abuse.  Burton became angry and confrontational with Bixter.  Dominique was pronounced dead at South Shore Hospital at 11:12 a.m.

Chicago police officer Joseph Ramirez testified that he arrived at the apartment while the paramedics were trying to resuscitate Dominique.  One of the paramedics told him it was possible that Dominique had been abused.  Burton yelled obscenities at the paramedic, so Ramirez asked Burton and Locke to sit in the squad car.  Burton told Ramirez she did not know what the paramedic was talking about.  She said Dominique had taken a bath, sat on the toilet and then became unconscious.
  Locke had attempted cardiopulmonary resuscitation (CPR).

Ramirez drove defendants to South Shore Hospital after dropping Tiffany at Burton's mother's house.  At the hospital, Ramirez saw a bruise on Dominique's forehead and asked Burton what caused it.  Burton said that Dominique had fallen at her grandmother's house over the weekend.  When the doctor undressed Dominique, Ramirez saw a "bunch of burns and bruises all over the body, front and back."  Ramirez testified he then called detectives about the case.

Mary Maloney, a hospital social worker, testified that she saw multiple scars, healing abrasions, bruises and ruptured blisters all over Dominique's body.  Maloney than spoke to Burton and Locke.  Burton said Dominique was in the bathtub but got out to sit on the toilet.  She then vomited and her eyes were spinning in her head.  Maloney saw no evidence of vomit on Dominique.  Burton said she thought Dominique was "not quite right" and was slow for a three-year-old.  Burton said she had eight children and that Dominique had been returned to her by the Department of Children and Family Services (DCFS) in May 1995.  When Dominique returned from foster care, she had those scars on her body.

Dr. Joseph Cogan, the medical examiner, testified that he performed an autopsy on Dominique on January 23, 1996.  Dominique's injuries included bruises, abrasions and contusions on her face and head, all received within 24 hours of death.  Injuries received minutes to hours before death included superficial abrasions behind both ears, a bruise on the chin, parallel abrasions on the back of the neck possibly made by fingernails, a circular burn between her fingers, and a recently torn frenulum, the skin between the upper lip and nose.  Cogan testified that a torn frenulum can be produced when a hand is put over a person's mouth and the person then tries to open the mouth to breathe.  Cogan noted older injuries, including abrasions around the nipples, contusions on the back of the thighs, burns on the legs and bruises on the arms.  After his internal examination, Cogan concluded that the cause of death was drowning with multiple injuries.  He testified that drowning could have occurred if Dominique's head were held submerged in water for several minutes or by several short, repeated dunks that caused her to inhale water each time.

Detective Ted Przepiora testified that he arrived at South Shore Hospital at 11:30 a.m.  Przepiora saw the injuries on Dominique's body.  A doctor told him the injuries were evidence of child abuse.  Burton told Przepiora that she put Dominique in the bathtub, then put her on the toilet and left her.  She later discovered Dominique unconscious on the floor.  Przepiora later spoke to paramedic Bixter, who told him that the body had been cold and rigor mortis was setting in when he first examined Dominique.

Burton told Przepiora that Locke left the apartment that morning to make a telephone call.  While he was gone, Dominique urinated in her pants.  While Burton was putting Dominique in the bathtub, Locke returned.  Burton said that she heard a noise while Dominique was on the toilet and assumed Dominique had fallen.  She found Dominique on the bathroom floor, unconscious and not breathing.  After trying to revive Dominique, Burton called her mother.  Burton said that Dominique's other injuries occurred while she was in foster care.

Przepiora testified that, at the police station, Burton told detectives that the burns on the back of Dominique's legs were sustained when Locke disciplined Dominique for incorrectly pronouncing her name.  Burton saw Locke holding Dominique above the radiator.  Burton did not do anything to stop Locke and did not seek medical treatment for Dominique because she did not want DCFS to remove her children again.

Burton then said that Locke left the apartment that morning to make a telephone call.  After Dominique urinated in her pants, Burton put her in the bathtub and left her.  Locke returned and Burton told him that Dominique had another accident.  Locke went into the bathroom and Burton heard him yelling at Dominique.  Dominique then became quiet and Locke left the bathroom and closed the door.  Burton later found Dominique lying face up in the bathtub.  She was not breathing.

Detective Przepiora then spoke to Cynthia Hodges, the social worker assigned to Burton.  Hodges told him Dominique had been returned to Burton from foster care in April 1995.  She had been removed because she tested positive for cocaine exposure at birth.

Przepiora next spoke to Locke.  He first gave Locke 
Miranda
 warnings and asked him about Dominique's injuries.  Locke said that Burton told him Dominique had accidentally brushed against the radiator, but that he was unaware of other injuries.  Locke said he and Burton put Dominique in the bathtub, then on the toilet.  Burton later found Dominique unconscious on the floor.  In a later interview, Locke said he occasionally twisted Dominique's ears as punishment.

Przepiora then spoke to Burton and advised her of her 
Miranda
 rights.  She said she walked into the bathroom and saw Locke forcing Dominique's head into the water two or three times while Dominique screamed.  Burton yelled at him to leave Dominique alone.  Locke came out of the bathroom, closed the door, and then played cards with Burton.  After the card game, Burton went into the bathroom and found Dominique floating in the bathtub, not breathing.  

Assistant State's Attorney Matthew Walsh testified that Locke confessed after he was confronted with the autopsy results showing that Dominique was drowned.  Locke demonstrated how he forced Dominique's face into the water.  Locke stated that he returned to the apartment on the morning of January 22.  Burton was chasing Dominique with a belt, saying, "That little bitch pissed again."  Locke saw that Dominique had urinated on the new carpet.  Burton filled the bathtub and put Dominique in.  Locke splashed her and told her, "You have to stop pissing on the floor."  He forced her head under the water for about 15 seconds, let her up, and repeated his statement.  He dunked her three times.  Dominique sat up and then turned on her side.  Locke left the bathroom with Burton and Tiffany.  He and Burton played cards for half an hour.  He did not hear noise from the bathroom.  Burton then called him into the bathroom where she lifted Dominique out of the tub.  Locke tried to "push on her back" but Dominique did not wake up.  Locke dried her off and dressed her in a clean sleeper.  Burton called her mother, who then called 911.  Locke said the marks on Dominique's buttocks were caused when he put her on the radiator around Christmas.  Locke's handwritten statement was submitted to the jury.

We first address Burton's argument that the trial court erred in issuing a nonpattern jury instruction on parental accountability.  The following instruction, which tracks language in 
People v. Stanciel
, 153 Ill. 2d 218, 606 N.E.2d 1201 (1992), was given in addition to the standard instruction on accountability:

"A person is legally accountable for the conduct of another person when, either before or during the commission of an offense, and with the intent to promote or facilitate the commission of the offense, he knowingly solicits, aids, abets, agrees to aid, or attempts to aid the other person in the planning or commission of the offense.

A person aids another person in the commission of an offense where she has an affirmative duty to act to protect her child, and chooses not to act.

A parent has an affirmative duty to protect his or her child where the parent knows 
or reasonably should know
 that the child is in danger of serious injury."  (Emphasis added.)

Burton objects to the phrase "reasonably should know," arguing that it allowed the jury to convict her based on a 
negligent mental state rather than the knowing or intentional state of mind required for a first degree murder conviction.

We review a trial court's decision to issue nonpattern jury instructions under an abuse of discretion standard.  
People v. Pinkney
, 322 Ill. App. 3d 707, 720, 750 N.E.2d 673 (2000).  Nonpattern instructions must not be misleading or confusing.  
People v. Bush
, 157 Ill. 2d 248, 254, 623 N.E.2d 1361 (1993). 

The supreme court in 
Pollock
 clarified the holding in 
Stanciel
, on which the State relied in drafting its nonpattern instructions:  

"We held that the mothers' 
knowledge
 that their children were the victims of an on-going pattern of abuse, in conjunction with the mothers' continued sanctioned exposure of the children to this abuse, was sufficient to support the inference that the defendant-mothers shared the principal's criminal intent or that there had been a common criminal design.

* * * 

It is a misconstruction of 
Stanciel
 for the State to claim that a parent's legal duty to protect her child may be imposed if she does not know, but should know, of a danger to her child. *** The term 'knew or should have known' was used in 
Stanciel
 in reference to the mother's awareness of the severity of the injuries being sustained, not the mother's awareness of the existence of abuse.

Rather than diluting the knowing or intentional 
mens
 
rea
 requirement for accountability, 
Stanciel
, instead, stands for the proposition that when proof that a parent aided and abetted an offense is to be deduced from an omission to act, the parent must know of a serious and immediate threat to the welfare of the child.  That is, there must be evidence from which it can be inferred that the parent knew that the child was sustaining injury and, based on the severity of the injuries being sustained, knew that there was a substantial risk that death or great bodily [injury] would result if the parent did not act to protect the child."
  (Emphasis in original and added.)  
Pollock
, 202 Ill. 2d at 213-15.

The supreme court reversed Pollock's conviction based on the instructional error.  The court went on to find the evidence insufficient to support a felony murder conviction based on accountability.  
Pollock
, 202 Ill. 2d at 224.  Pollock was not in the room when her boyfriend committed the aggravated battery that led to her child's death.  Nor were the child's earlier injuries severe enough to support the inference that Pollock knew or should have known that her boyfriend was abusing the child and that defendant sanctioned the abuse.  
Pollock
, 202 Ill. 2d at 220.  Finally, Pollock's behavior after her child's death suggested that she was unaware of foul play until told of her boyfriend's admission, at which time she cut all ties with him and assisted police in his prosecution.  
Pollock
, 202 Ill. 2d at 222.

But, under 
Pollock
, an instructional error is not harmless where accountability is a fundamental element of the offense.  "[T]he giving of conflicting instructions, one of which is a correct statement of law and the other an incorrect statement of law, is not harmless error."  
People v. Bush
, 157 Ill. 2d 248, 254, 623 N.E.2d 1361 (1993), citing 
People v. Haywood
, 82 Ill. 2d 540, 545 (1980).  In light of 
Pollock
, we must reverse Burton's conviction and remand for a new trial.

We must also address the sufficiency of the evidence "to remove the risk of subjecting defendant to double jeopardy."  
Jones
, 175 Ill. 2d at 134.  Here, the facts supporting accountability are much stronger than in 
Pollock
.  Burton knew that Dominique had been injured by Locke, and knew or should have known from the severity of the injuries that Dominique was at substantial risk for death or great bodily harm.  Dominique's earlier injuries were obvious and extensive, including burns, abrasions and bruises.  More importantly, the evidence showed that Burton was present when Locke held Dominique's head under water three times, but did nothing to assist Dominique or stop Locke.  In fact, she left Dominique unattended in the bathtub after the dunking while she and Locke played cards in the next room.  When she removed Dominique from the bathtub, Burton called her mother instead of 911.  Rigor mortis had already set in when the paramedics arrived.  Burton also lied to the paramedics, police and social workers when first questioned, telling them that Dominique fell off the toilet and she found her unconscious.  Proof that the defendant maintained a close affiliation with her companions after the commission of the crime and failed to report the crime are factors the trier of fact may consider in deciding accountability.  
People v. Reid
, 136 Ill. 2d 27, 62, 554 N.E.2d 174 (1990). As in 
Stanciel
, there is sufficient evidence here to support the inference that Burton's failure to act aided and abetted Locke's offense.  See 
Stanciel
, 153 Ill. 2d at 232.  We believe that, even with proper jury instructions, the evidence at trial was sufficient for the jury to conclude beyond a reasonable doubt that Burton was guilty based on accountability.  We note that this finding is not binding on retrial.  
People v. Taylor
, 76 Ill. 2d 289, 309-10, 391 N.E.2d 366 (1979).

Defendants also argue that they were denied a fair trial because of the prosecutors' prejudicial remarks during opening and closing arguments.  

An issue is waived on appeal if the defendant fails to object to it both at trial and in a posttrial motion.  
People v. Enoch
, 122 Ill. 2d 176, 187, 522 N.E.2d 1124 (1988).  Burton preserved only one issue for appeal.  Locke objected to only one comment at trial and did not include an objection to it in his posttrial motion.  But both defendants urge us to review these comments under the plain error rule.  Plain error may be invoked where the error affects substantial rights or the evidence at trial is closely balanced.  
People v. Keene
, 169 Ill. 2d 1, 17-18, 660 N.E.2d 901 (1995).  We will undertake a plain error analysis.

An opening statement may include a discussion of the evidence and matters which may reasonably be inferred from the evidence.  
People v. Warmack
, 83 Ill. 2d 112, 126, 413 N.E.2d 1254 (1980).  A prosecutor's improper comments amount to reversible error only when they create substantial prejudice against a defendant, such that it is impossible to say whether or not a guilty verdict resulted from those comments.  
People v. Nieves
, 193 Ill. 2d 513, 533, 739 N.E.2d 1277 (2000).  It is error for a prosecutor to make an argument whose only effect is to "inflame the passion or arouse the prejudice of the jury against defendant, without throwing any light on the question for decision."  
People v. Smith
, 141 Ill. 2d 40, 60, 565 N.E.2d 900 (1990).

The evidence in this case was not closely balanced.  Defendants make no argument on appeal about the sufficiency of the evidence.  To decide whether the prosecutor's comments created substantial prejudice against defendants, we must examine the comments themselves, but in the context of the trial as a whole and the evidence presented.  
People v. Kliner
, 185 Ill. 2d 81, 151-52, 705 N.E.2d 850 (1998).

Both defendants contend that the prosecutors improperly referred to Christmas and the victim's birthday, which they claim aroused the prejudice of the jury against defendants.  At Locke's trial, the prosecutor stated:

"As we sit here today, folks, we do not know if Dominique Spencer celebrated her third birthday.  We do not know if on that day she saw a tiny glimmer of happiness in her otherwise tortured life.  We do not know if she got a party, if she got a present, a little stuffed animal ***.  What we do know, ladies and gentlemen, is that more likely, if it was a normal day in the Locke-Burton household *** what we do know is she probably got, as she got on a regular and systematic basis, either a whipping, a beating, a punching, or a burning, or some other unique and creative form of torture that these two individuals administered *** on a regular basis."

The prosecutor argued further that Dominique was "still wearing for her birthday suit what [Locke] had given her for Christmas, which was third degree burns to the back of her buttocks...from placing Dominique on a burning hot radiator around Christmastime.  Those wounds were still healing as of her birthday. ***  She was still wearing the wounds of her Christmas present that she had received at his hands."  Similar remarks were made at Burton's trial.

We know from the evidence introduced at trial that, in the weeks and days before her death, Dominique suffered injuries that caused bruises, abrasions, burns and other marks on her body, and that these injuries occurred around Christmas and the victim's birthday, which was one week before her death.

Defendants argue that in one instance the prosecutor misstated the evidence by saying that Dominique's burns were third degree, that Locke burned her deliberately, and that the date she was burned was relevant to her death.  These comments were also reasonable inferences from the evidence.  The autopsy photos showed that Dominique suffered severe burns.  The medical examiner testified that it could take several minutes in contact with the radiator to cause such burns, raising the inference that they were not the result of an accident.  And the date Dominique was burned was relevant because it tended to show a pattern of abuse shortly before her death.

Locke next argues that the prosecutors improperly aligned themselves with the jury.  
 People v. Lyles
, 106 Ill. 2d 373, 411-12, 478 N.E.2d 291 (1985), quoting 
People v. Oden
, 20 Ill. 2d 470, 483, 170 N.E.2d 582 (1960) ("An assistant State's Attorney, it must be remembered, 'is the representative of all the people, including the defendant, and it is as much his duty to safeguard the constitutional rights of the defendant as those of any other citizen' " 
).
  The prosecutor here stated:  "Together with my partner *** we represent the People of the State of Illinois.  As your representatives, it's our duty and, actually, our privilege to bring to you the evidence, the evidence that's going to show that this man and his girlfriend are guilty of first degree murder."  
Lyles
 is inapplicable here; it had nothing to do with a prosecutor improperly aligning himself with the jury.  We also find 
People v. Thomas
, 146 Ill. App. 3d 1087, 497 N.E.2d 803 (1986), distinguishable.  In 
Thomas
, the prosecutor stated: " 'There's nobody here for the People, just you.' "  The court found that this statement diminished the presumption of innocence.  
Thomas
, 146 Ill. App. 3d at 1089.  The prosecutor's statement here did not implicate the presumption of innocence.  And in 
People v. Johnson
, 149 Ill. App. 3d 465, 468, 500 N.E.2d 728 (1986), the prosecutor "unfairly aligned himself with the jury by referring to 'our job' to find the facts."  We find 
Johnson
 inapplicable as well.  Although the prosecutor here should not have said, "As your representatives," it was an isolated phrase and the thrust of her statement was that the State would prove defendants guilty of first degree murder.

Locke further argues that the following statements were unsupported by the evidence:  (1) that Dominique was "nothing more than a whipping post, a punching bag, and an ashtray"; (2)

 "there is no photo of this little girl on this wall *** and it's as if she's already dead to them because she's not up there folks, [she's] not up here on the Burton, Locke family wall"; (3) that defendants called her a "little bitch" for mispronouncing her name; (4) that she was born with cocaine in her system; and (5) that Dominique suffered a "painful, excruciating and agonizing death."  We disagree.  An examination of the record shows evidence to support each of these statements.  The trial court instructed the jury at the beginning of trial and during jury instructions that opening statements and closing arguments are not evidence.  See 
People v. Graca
, 220 Ill. App. 3d 214, 580 N.E.2d 1328 (1991).  Locke was not substantially prejudiced by the prosecutor's comments such that the jury might have reached a different verdict had the prosecutor not made them.  
People v. Cloutier
, 156 Ill. 2d 483, 507-08, 622 N.E.2d 774 (1993), citing 
People v. Henderson
, 142 Ill. 2d 258, 322-23, 568 N.E.2d 1234 (1990);  
People v. Mullen
, 141 Ill. 2d 394, 407, 566 N.E.2d 222 (1990); 
People v. Cisewski
, 118 Ill. 2d 163, 175, 514 N.E.2d 970 (1987); 
People v. Morgan
, 112 Ill. 2d 111, 132, 492 N.E.2d 1303 (1986).

Both defendants object on appeal to similar comments made in closing and rebuttal arguments:

"You might think your service here the last six days is a tiny speck in the landscape of your life, but it makes an awful difference, each tiny little act of heroism heads up in a society that needs it.  You're important, we need you to be the guardians of the children.  You can do your share and be a hero.

* * *

Sharon Burton allowed evil to flourish from that home and Sharon Burton nurtured that evil instead of nurturing her daughter and evil did flourish.  Dominique Spencer has now escaped that evil and hopefully gone to a better place, and if you add up all the tears that she suffered over the ten months that she was in that man's care and custody, along with the woman she called mother, if you add up all those tears, they build a stairway to heaven to which she may be looking down upon us.

Little girls like Dominique are very beautiful with a special name to go with that beauty, she's got a special place in heaven, a very special place, and just as Dominique has a very special place that was reserved for her, Leroy Locke has a very special place reserved for him.

The evidence and the law has shown you that it's in the opposite direction."

We agree that these comments were designed to appeal to the emotions of the jury, but the prejudicial impact on the jurors is muted by the overwhelming evidence of guilt and defendants' failure to preserve the issue for appeal.  The phrase "inflame the passions of jurors" is most often used in the context of inflammatory evidence–most notably, photographs.  See 
People v. Buss
, 187 Ill. 2d 144, 230, 718 N.E.2d 1 (1999); 
People v. Terrell
, 185 Ill. 2d 467, 495-96, 708 N.E.2d 309 (1998); 
People v. Brown
, 172 Ill. 2d 1, 41, 665 N.E.2d 1290 (1996); 
People v. Hobley
, 159 Ill. 2d 272, 316-17, 637 N.E.2d 992 (1994).  Rarely has our supreme court reviewed a case when the phrase is used to describe argument.  Where it has, the court found the argument did not prejudice the jury where the evidence of guilt was overwhelming and the prosecutor's argument was a fair rendition of the facts of the case.  See 
People v. Armstrong
, 183 Ill. 2d 130, 146, 700 N.E.2d 960 (1998) ("The language and imagery used by the prosecution to describe the defendant's conduct was not a personal attack on the defendant, and was scarcely more prejudicial than a clinical rendition of the cold facts"); 
People v. Easley
, 148 Ill. 2d 281, 332-33, 592 N.E.2d 1036 (1992).  We note again that defendants on appeal do not challenge the sufficiency of the evidence.  See 
People v. Johnson
, 149 Ill. 2d 118, 145-46, 594 N.E.2d 253 (1992).

Burton objected at trial to the prosecutor's comments during opening statements that Dominique was the victim of "almost ritualized" child abuse and that the injuries she received, including whipping marks and radiator burns, contributed to her premature death.  During closing arguments, the prosecutor sarcastically referred to Burton as "Mother Theresa" and "June Cleaver."  Burton failed to include her objections to these comments in her posttrial motion.  Error is waived if a defendant fails to make a timely objection at trial and in a posttrial motion.  
Enoch
, 122 Ill. 2d at 187.  But Burton seeks review of these comments under a plain error analysis.  We find no plain error here.  The evidence was not closely balanced and the remarks are amply supported by evidence that Dominique was repeatedly bruised, whipped or burned.  Though we do not condone the prosecutor's unnecessary use of sarcasm, "it is entirely proper for a prosecutor to denounce a defendant's wickedness, engage in some degree of invective, and draw inferences unfavorable to the defendant if such inferences are based upon the evidence."  
People v. Gutirrez
, 205 Ill. App. 3d 231, 261, 564 N.E.2d 850 (1990), citing 
People v. Bunting
, 104 Ill. App. 3d 291, 296, 432 N.E.2d 950, 954 (1982).  The prosecutor was attempting to describe how Burton failed in her parental duty to prevent Locke from harming Dominique.  Given the undisputed graphic evidence in the record, Burton could not be prejudiced by prosecutorial remarks that were not out of proportion to what the jury properly considered as evidence.

Burton also argues that, during opening statements, the State improperly invited the jurors to imagine themselves as the victim.  Defendant cites 
People v. Spreitzer
, 123 Ill. 2d 1, 37-38, 525 N.E.2d 30 (1988) (prosecutor asked jury, " 'Please attempt to place yourselves in the shoes of Linda Sutton ***.  Place yourselves in their shoes and think what they must have been thinking about at the time they were murdered' ").  The State argues that this case is more akin to 
People v. Terrell
, 185 Ill. 2d 467, 708 N.E.2d 309 (1998).  In 
Terrell
, the prosecutor asked the jurors: " 'Picture what it was like.  We sit here in this courtroom and we can't get the feeling for what it's like.' "  
Terrell
, 185 Ill. 2d at 512.  The supreme court held that the prosecutor did not improperly attempt to get the jury to empathize with the victim, but "was simply reviewing the facts and circumstances of the crime with the jury."  
Terrell
, 185 Ill. 2d at 512-13.

Here, the prosecutor said in opening argument, "Let's all try to imagine *** what it would be like to live the life of Dominique Spencer."  The prosecutor repeatedly said to the jury, "You are Dominique Spencer," and called on the jury to imagine the various forms of abuse Dominique suffered.

We agree with defendants that the prosecutor's remarks here more closely resembled those in 
Spreitzer
.  But, as in 
Spreitzer
, these remarks were not so prejudicial that defendants were deprived of a fair trial.  
Spreitzer
, 123 Ill. 2d at 38.

We find no error in the State's comments that three of Burton's children tested positive for cocaine at birth.  Burton testified that she smoked crack cocaine while she was pregnant with Dominique and two other children.

Finally, defendants argue that it was improper for the prosecutor to refer to Burton as a "monster" and Locke as a "creature."  We agree with the State that 
People v. Green
, 118 Ill. App. 3d 227, 236, 454 N.E.2d 792 (1983), applies here.  In 
Green
, the prosecutor's references to the defendant as "depraved," "an animal," and "the lowest form of human being" were supported by the evidence that he was responsible for the death of a 13-month-old baby, whose cause of death was ligature strangulation associated with subdural hematoma.  
Green
, 118 Ill. App. 3d at 236.  Similarly, defendants suffered no prejudice where the prosecutor stated, "Dominique Spencer, her nightmares came when her eyes were open, and the monsters in her life had names.  One of them was named Leroy, and the other one was named Mommy ***."  In light of the evidence at trial showing that Dominique suffered bruises, burns and abrasions repeatedly for several months before her death and that Burton did not prevent Locke from drowning Dominique in the bathtub, the prosecutor's comment was not prejudicial.

The long-settled test for reversing a conviction based on a prosecutor's remarks is "whether the jury would have reached a contrary verdict had the improper remarks not been made."  
People v. Heard
, 187 Ill. 2d 36, 73, 718 N.E.2d 58 (1999).  "To constitute reversible error, the complained-of remarks must have resulted in substantial prejudice to the accused, such that absent those remarks the verdict would have been different."  
Cisewski
, 118 Ill. 2d at 175, citing 
Morgan
, 112 Ill. 2d at 132.  In 
People v. McCann
, 247 Ill. 130, 170-71, 93 N.E. 100 (1910), our supreme court surveyed the issue, citing cases dating to 1888.  "It is very difficult to lay down any flexible rule as to the proper limit of an argument upon the facts and circumstances of a case, and unless the court can see that statements are unprovoked or so foreign to the case as to be calculated to produce a result which otherwise would not have been reached, a judgment of conviction will not be reversed on that ground."  
Gallager v. People
, 211 Ill. 158, 169, 71 N.E. 842 (1904).  Here, where the evidence of guilt is overwhelming, we do not believe a reasonable jury would have acquitted defendants but for the remarks of the prosecutors.

Burton did preserve for appeal the issue of the prosecutor's comments about involuntary manslaughter.  The prosecutor made a series of comments in an attempt to define involuntary manslaughter and "recklessness" for the jury.  Among other comments, she stated: "Involuntary manslaughter is an accident. ***  Involuntary manslaughter is less than stealing a car under the law."  The trial judge sustained objections to those comments that misstated the law and directed the jury to disregard the comments and follow the written instructions.  The trial court can correct an error by sustaining a timely objection and instructing the jury to disregard the comment.  
People v. Franklin
, 135 Ill. 2d 78, 552 N.E.2d 743, 753 (1990).  We conclude that the error was cured by the trial court's prompt corrective action and does not constitute grounds for reversal.

Defendants next argue that they received ineffective assistance of counsel when their defense counsel failed to submit a recklessness instruction or object to an incorrect verdict instruction.  

To prove ineffective assistance of counsel, a defendant must show that counsel failed to perform in a reasonably effective manner and there is a reasonable probability that, but for this substandard performance, the outcome of the proceeding would have been different.  
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984); 
People v. Albanese
, 104 Ill. 2d 504, 473 N.E.2d 1246 (1984).  If the ineffective assistance claim can be disposed of on the ground that the defendant did not suffer prejudice, we will not decide whether counsel's performance was deficient.  
People v. Eddmonds
, 143 Ill. 2d 501, 512, 578 N.E.2d 952 (1991).  The trial court's failure 
sua sponte
 to give a definitional instruction such as recklessness is not prejudicial error.  See 
People v. Carlson
, 79 Ill. 2d 564, 584-85, 404 N.E.2d 233 (1980); 
People v. Lake
, 298 Ill. App. 3d 50, 697 N.E.2d 1147 (1998).  "[N]o party may raise on appeal the failure to give an instruction unless he shall have tendered it."  
Carlson
, 79 Ill. 2d at 583-84.

Both Burton and Locke argue that the trial court erred in giving the following paragraph at the end of the involuntary manslaughter instruction:

 "If you find the State has proved the defendant guilty of both first degree murder and involuntary manslaughter, you should select the verdict form finding the defendant guilty of first degree murder and sign the one as I have stated.  Under these circumstances, do not sign manslaughter."

Defendants tendered the instruction on involuntary manslaughter, including this paragraph. Defendants now claim that the trial court erred in giving this instruction because "a jury cannot properly find the offenses of murder and involuntary manslaughter to exist simultaneously."     
Lake
, 298 Ill. App. 3d at 55.  In the committee notes to the pattern criminal instructions is a notation that the last paragraph of the instruction, at issue here, should not be given when the lesser offense has the less culpable mental state of recklessness.  Illinois Pattern Jury Instructions, Criminal, No. 26.01Q, Committee Note, at 386-87 (3d ed.1992).  The State responds that defendants waived this argument by tendering the erroneous instruction themselves.  
People v. Basden
, 264 Ill. App. 3d 530, 542, 636 N.E.2d 919 (1994).  We agree.  Defendants next argue that the issue should be reviewed under the plain error doctrine.  "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded.  Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court."  134 Ill. 2d R. 615(a).

Where there is overwhelming evidence to support the jury verdict of first degree murder, the instructional error does not rise to the level of plain error.  
People v. Rodriguez
, 275 Ill. App. 3d 274, 288, 655 N.E.2d 1022 (1995); 
People v. Gonzalez
, 238 Ill. App. 3d 303, 314, 606 N.E.2d 304 (1992); 
People v. Tucker
, 245 Ill. App. 3d 722, 730-31, 614 N.E.2d 1265 (1993) (finding that error in giving the last paragraph of Illinois Pattern Jury Instructions, Criminal, No. 26.01Q (2d ed. Supp. 1989) did not rise to the level of plain error).  Here, the evidence supporting the jury's verdict of first degree murder was overwhelming.  Burton watched while Locke forced Dominique's head under the water three times, 15 seconds at a time.  Then both left the three-year-old unattended in the bathtub for half an hour while they played cards, and failed to promptly call paramedics when they discovered her unresponsive.  The record shows that Dominique had suffered extensive past abuse, including radiator burns, abrasions around the nipples and multiple bruises.  Locke admitted to twisting her ears as punishment.  "Evidence of a defendant's prior acts of violence toward a victim also tends to prove a defendant's mental state (
e.g.
, the presence of intent) at the time of the commission of the charged offense. "  
Rodriguez
, 275 Ill. App. 3d at 284, citing 
People v. West
, 137 Ill. 2d 558, 586, 560 N.E.2d 594, 607 (1990);  
People v. McCarthy
, 132 Ill. 2d 331, 344, 547 N.E.2d 459, 464 (1989);  
People v. Lucas
, 132 Ill. 2d 399, 429, 548 N.E.2d 1003, 1015 (1989).  We find this case, where Locke held Dominique's head under water because she had a toilet training accident, factually similar to 
Rodriguez
.  There, the court held that "the fact that the defendant admittedly struck the victim out of anger (presumably because she had defecated in her pants and he had soiled his hand) further negates a finding of recklessness because '[a] person who is driven by his bad temper to injure or kill another acts knowingly or intentionally, not recklessly.' "  
Rodriguez
, 275 Ill. App. 3d at 285, quoting 
People v. Summers
, 202 Ill. App. 3d 1, 11, 559 N.E.2d 1133 (1990).  Because the evidence of defendants' guilt was overwhelming, we cannot say that the outcome of this appeal would be different if defense counsel had preserved the error for review.  We find no ineffective assistance of counsel.

The State concedes that, in light of 
People v. Wooters
, 188 Ill. 2d 500, 722 N.E.2d 1102 (1999), both defendants are entitled to have their natural life sentences vacated and their cases remanded for resentencing.  Defendants were sentenced on September 27, 1999, to mandatory terms of life imprisonment because the victim was less than 12 years old.  730 ILCS 5/5-8-1(a)(i)(a)(ii) (West 1998).  While defendants' appeals were pending, the Illinois Supreme Court in 
Wooters
 held that the sentencing provision under which defendants were sentenced, Public Act 89-203 (Pub. Act 89-203, eff. July 21, 1995), was unconstitutional.  We vacate defendants' sentences and remand Locke's case for resentencing in light of 
Wooters
.  Should Burton be convicted on remand, she should also be sentenced under 
Wooters
.

We affirm defendant Locke's conviction, vacate his sentence and remand for resentencing.  We reverse defendant Burton's conviction and sentence and remand for a new trial consistent with this opinion.

No. 1-99-3503, Reversed and remanded.

No. 1-99-3796, Affirmed in part and vacated in part; cause remanded.

GORDON and BURKE, JJ., concur.