**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 190195-U

Order filed February 10, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0195 Circuit No. 18-CF-8 |
| | ) | |
| RICKY J. NETTLES, | ) ) | Honorable Norma Kauzlarich, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HAUPTMAN delivered the judgment of the court.
Justices Holdridge and Lytton concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*:  The evidence was sufficient to prove defendant guilty beyond a reasonable doubt. Defendant was not denied a fair trial as a result of prosecutorial misconduct.

¶ 2      Defendant, Ricky J. Nettles, appeals his six predatory criminal sexual assault of a child convictions. Defendant argues that the State failed to prove him guilty beyond a reasonable doubt on three counts. Additionally, he argues that the State made improper comments during closing arguments which denied him a fair trial. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        The State charged defendant with six counts of predatory criminal sexual assault of a

child (720 ILCS 5/11-1.40(a)(1) (West 2012)). In three counts, the State alleged that between

June 2012 and November 2015, defendant, who was over 17 years of age, placed his penis in the

mouth of C.A.M., who was born in 2006. In the other three counts, the State alleged that between

June 2012 and November 2015 defendant placed his tongue in the vagina of C.A.M. The matter

proceeded to a jury trial.

¶ 5        At trial, C.A.M. testified that she was 12 years old. C.A.M. understood she was there to

talk about defendant touching her. She told her mother about what happened but did not tell her

everything because she was embarrassed and did not know what her parents would think of her.

Defendant was her grandmother's boyfriend. Defendant first began touching C.A.M.'s "private

part" with his hand over her clothes at her great grandmother's house. Then, at her

grandmother's house, defendant "would touch [her] in [her] private parts" and her breasts with

his hand.

¶ 6        C.A.M. saw defendant's private part in her grandmother's living room. Defendant

"pulled his pants down, but not all the way off, and he would have [C.A.M.] put it in [her]

mouth." When defendant put his private part in C.A.M.'s mouth "[i]t would get like a little bit

harder." C.A.M. described defendant's private part as being straight and having little hairs. After

defendant's private part was removed from her mouth, it was redder and defendant "would like

put his hand around it and he would move it up and down." C.A.M. testified to a second time

that defendant put his private part in her mouth and that it was the same as the first incident she

described. She also stated that while in a bedroom, defendant touched her private part and her

breasts with his hand. C.A.M. was asked "[w]as there anything else that he touched you with?"

2

She replied "[n]o." The State asked "[w]as there any other part of his body that came into contact with your body?" C.A.M. responded "[n]o." She stated that defendant touched her on her private part, and "that's really all I remember."

¶ 7 C.A.M. could not remember how many times defendant's private part was in her mouth and she stated she was unable to remember "[b]ecause I don't really want to remember it, so it's hard to remember." She then stated it happened "[t]wo or three times" total. There was never a night that she stayed at her grandmother's house that defendant did not touch her with his hand but there were times that he did not put his private part in her mouth. She spent the night at her grandmother's house at least once or twice a year. C.A.M. did not remember anything else about how defendant touched her body. She was 9 or 10 years old when defendant stopped touching her because she threatened to tell her parents.

¶ 8 C.A.M. remembered meeting with Hector Vasquez at the Child Advocacy Center. She remembered charts with a boy's body and a girl's body and that she wrote on those charts. C.A.M. provided testimony as to the sleeping arrangements when she spent the night at her great grandmother's and grandmother's houses.

¶ 9 Vasquez testified that he was employed with the Illinois Department of Children and Family Services. In June 2017, he interviewed C.A.M. at the Child Advocacy Center. The interview was recorded. Vasquez reviewed the recording and it accurately represented what occurred during his interview with C.A.M. The recording was admitted into evidence and published.

¶ 10 On the recording, C.A.M. told Vasquez that defendant made her suck his private part and that defendant licked her private part. Vasquez had C.A.M. identify various body parts on diagrams of a male and female body. On the diagrams, C.A.M. identified the male and female

3

genitals as private parts. When Vasquez asked C.A.M. to put a box where defendant licked her, she put a box around what she identified as the female private part. Vasquez asked C.A.M. how many times defendant made her suck his private part and she responded that it happened every time she stayed at her grandmother's house. Vasquez then asked "How bout when uh he touched you and he licked you there [pointing to what C.A.M. had identified as the female private part on the diagram]? Um, do you remember uh how many times that happened?" C.A.M. responded "the same times" (having previously answered how many times defendant put his private part in her mouth), and too many times to count.

¶ 11    The defense presented witnesses who contradicted some of C.A.M.'s testimony regarding sleeping arrangements when C.A.M. would spend the night at her grandmother's and great grandmother's houses. Defendant did not testify.

¶ 12    At the outset of its closing argument, the State pointed out to the jury that although C.A.M was 12 years of age at the time of trial, she was only 5 years old when the abuse by the defendant began. The State suggested that in judging the credibility of C.A.M., the jury should use their "common sense and life experience" as instructed. The State admonished the jury to "[t]ransplant yourself back to that age." Defense counsel immediately requested a sidebar, and the record indicates a discussion was held off the record. When the proceedings resumed, the State again discussed credibility, and in so doing, instructed the jurors to look to a witness's ability to observe something, to consider their age, and to consider their ability to attach a memory to something. The State told the jury that they want witnesses to be able to give details and remember what happened. Then the State said, "I challenged you at the beginning of that grooming process, the beginning of [defendant] grooming this 12-year old," at which point defense counsel stated, "Your Honor, may I be heard again." At that time there was another

4

discussion that was held off the record at the bench. The State continued "When [defendant] first started having inappropriate sexual contact with this young girl, what exactly was going on in her mind as to what it was?" Later, the prosecutor, after stating defendant put his penis in the victim's mouth three times and licked her vagina three times, argued "He did it when everybody was around in some way, but this is a man that groomed—" and defense counsel objected. The State then said "I'm sorry. I'm sorry. This is a man that developed this relationship with this girl."

¶ 13    The court instructed the jury that closing arguments are not evidence and that neither sympathy nor prejudice should influence them. The jury found defendant guilty on all counts.

¶ 14    Defendant filed a motion for new trial, which argued, in part, that the prosecutor improperly asked the jurors to place themselves in C.A.M.'s shoes and used the term "grooming" in closing arguments. During a hearing on the motion, the State acknowledged defendant's trial objection to the use of the term "grooming." After considering counsel's arguments, the court denied the motion.

¶ 15    The court sentenced defendant to consecutive terms of eight years' imprisonment on each count. Defendant appeals.

¶ 16                                II. ANALYSIS

¶ 17                          A. Sufficiency of the Evidence

¶ 18    Defendant argues that the State failed to prove him guilty beyond a reasonable doubt of three counts of predatory criminal sexual assault of a child based upon the allegation that defendant placed his tongue in or licked C.A.M.'s vagina. First, defendant asserts that because C.A.M. did not testify at trial that he licked her vagina, she essentially recanted the statement she made in the interview with Vasquez and therefore, there is not sufficient evidence to sustain

5

those charges. Second, defendant argues that even if there was sufficient evidence to sustain one count, there was not enough to sustain all three counts because Vasquez's question regarding how many times defendant licked C.A.M. was a compound question involving touching or licking.

¶ 19    When defendant challenges the sufficiency of the evidence, this court must determine whether the evidence, when viewed in the light most favorable to the State, would permit any rational trier of fact to find that the State proved the elements of the offense beyond a reasonable doubt. *People v. Ross*, 229 Ill. 2d 255, 272 (2008). "This standard of review does not allow the reviewing court to substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses." *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). "[I]t is the function of the trier of fact to determine the credibility of the witnesses, the weight to be given to their testimony and the inferences to be drawn from the evidence." *People v. Akis*, 63 Ill. 2d 296, 298 (1976). "When the facts in a case give rise to more than one inference, a reviewing court shall not substitute its judgment for that of the trier of fact unless the inference accepted by the trier of fact is inherently impossible or unreasonable." *People v. Price*, 225 Ill. App. 3d 1032, 1035 (1992). The credible testimony of a single witness is sufficient to convict. *People v. Gray*, 2017 IL 120958, ¶ 36.

¶ 20    Here, evidence was presented, in the form of C.A.M.'s recorded interview, that defendant licked her private part. C.A.M. stated that defendant licked her private part, and, on a diagram of the female body, she put a box around the genitals to show where defendant licked her. The jury could reasonably infer from this evidence that she was indicating that defendant licked her vagina. Further, it was for the jury to determine whether that evidence was credible when C.A.M. did not testify to that conduct at trial. C.A.M.'s testimony that she had difficulty remembering

6

because she was embarrassed and did not want to remember, provided the jury with a potential explanation for her failure to testify that defendant licked her vagina. Thus, rational jurors could reasonably conclude that the statements made by C.A.M. in her recorded interview were credible, despite not being repeated at trial. This is not a situation where C.A.M. recanted the allegations contained in the recorded interview by testifying that she never made those statements or that she falsely told Vasquez that defendant licked her vagina. Further, C.A.M. did not outright contradict the recorded statements by testifying defendant did not lick her vagina. These facts starkly distinguish this case from those relied on by defendant. See *People v. Brown*, 303 Ill. App. 3d 949, 958, 964 (1999) (the only witness with an admissible prior statement that identified defendant as the shooter testified at trial that he did not see defendant shoot the victim and he was 100% sure defendant did not shoot the victim); *People v. Arcos*, 282 Ill. App. 3d 870, 873-74 (1996) (witness's prior statement identified defendant as a participant in a murder but at trial he testified he made the prior statement under the influence of narcotics, he had feared for his life, he wanted to avoid incarceration, details of the crime were furnished to him by the police, and he made the statements as part of a deal with the State); *People v. Parker*, 234 Ill. App. 3d 273, 274-78 (1992) (multiple witnesses made prior statements identifying defendant as the shooter, but recanted at trial saying defendant was not the shooter and that either they did not give the prior statements or they were coerced into giving the statements); *People v. Wise*, 205 Ill. App. 3d 1097, 1098-1100 (1990) (victim testified at trial that defendant was involved in the robbery but had given two prior statements saying that defendant was not involved and was innocent). Based on the foregoing, rational jurors could conclude the State proved beyond a reasonable doubt that defendant licked C.A.M.'s vagina.

¶ 21    We now turn to defendant's secondary argument that the State failed to prove that he licked C.A.M.'s vagina three times. Here, despite defendant and the State characterizing the question Vasquez asked C.A.M. as being how many times defendant touched *or* licked her, as set forth above, Vasquez actually asked how many times defendant touched *and* licked her. Because the word "and" was used, rational jurors could reasonably infer from C.A.M.'s response that both touching and licking happened multiple times and the same number of times as defendant put his penis in her mouth, which the jury determined happened at least three times and which is supported by C.A.M.'s testimony and the recorded interview. Notably, defendant does not challenge the sufficiency of the evidence as to his conviction on the three counts based on allegations that he put his penis in C.A.M.'s mouth. Therefore, we conclude the State proved defendant guilty beyond a reasonable doubt on the three counts of predatory criminal sexual assault of a child based upon the allegation that defendant placed his tongue in or licked C.A.M.'s vagina.

¶ 22                          B. Prosecutorial Misconduct

¶ 23    Defendant argues that during closing argument the State improperly utilized the word "grooming," as it refers to an uncharged criminal offense (see 720 ILCS 5/11-25 (West 2012)), and asked the jurors to put themselves in C.A.M.'s shoes. Defendant argues that these improper remarks were so prejudicial as to deprive him of a fair trial.

¶ 24    The State argues that these issues were forfeited because defendant did not object during trial and did not raise the issues in a posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). We disagree. At trial, defense counsel requested sidebars after the State's comments were made. Furthermore, as to the use of the word "grooming," defense counsel also made a subsequent objection. Both issues were then raised in defendant's motion for new trial. Notably,

8

during a hearing on the motion for new trial, the State acknowledged defendant's objection to the State's use of the word "grooming" during its closing argument.

¶ 25    We review the court's determination as to whether a prosecutor made improper comments during closing argument for an abuse of discretion. *People v. Taylor*, 2019 IL App (3d) 160708, ¶ 31. However, we review *de novo* whether the improper comments denied defendant a fair trial. *Id.* ¶ 32. "[C]omments constitute reversible error only when they engender substantial prejudice against a defendant such that it is impossible to say whether or not a verdict of guilt resulted from those comments." *People v. Nieves*, 193 Ill. 2d 513, 533 (2000). "Closing arguments must be viewed in their entirety and the allegedly erroneous argument must be viewed contextually." *People v. Blue*, 189 Ill. 2d 99, 128, (2000).

¶ 26    In this matter, assuming the prosecutor's comments were improper, we conclude they did not substantially prejudice defendant so as to deny him a fair trial. The jury was instructed that closing arguments are not evidence and that neither sympathy nor prejudice should influence them. By giving this instruction, any potential prejudice was limited. See *People v. Sims*, 2019 IL App (3d) 170417, ¶ 49. We presume that the jury followed the circuit court's instructions, and defendant does not cite to anything in the record to rebut this presumption. See *id.* Additionally, the word "grooming" is a term that has a generic meaning outside of being a crime. The prosecution used it in this generic sense when describing the manner in which defendant was cultivating a relationship with this child. See, *e.g.*, *People v. Hughes*, 167 Ill. App. 3d 265, 267-68 (1988) (finding that when the State said in closing argument that " 'The State has shown with clear and convincing evidence, witnesses, and testimony that the Defendant is guilty***' ", that it was using the term "clear and convincing evidence" in the generic sense and noting that it was doubtful the average layperson would even realize it was a legal standard). Further, cases

9

involving comments that requested the jury place themselves in the victim's shoes and cases involving comments that served no purpose other than to inflame the jury have not required reversal. See, *e.g.*, *People v. Burton*, 338 Ill. App. 3d 406, 419 (2003) (concluding that comments asking the jury to imagine what it would be like to live the life of the victim and calling "on the jury to imagine the various forms of abuse [the victim] suffered" did not require reversal); *People v. Spreitzer*, 123 Ill. 2d 1, 37-38 (1988) (determining that, in a death penalty case, comments during sentencing that directly asked the jury to place themselves in the shoes of the victims and imagine what went through their minds when they were shot, stabbed and mutilated, did not require reversal); *People v. Libberton*, 346 Ill. App. 3d 912, 923-24 (2003) (holding that the prosecution's comments that were "nothing if not an attempt to anger the jury at defendant for his choice to have a trial" and "had no basis in the evidence and seems to have been designed to be purely inflammatory," did not require reversal).

¶ 27                                    III. CONCLUSION

¶ 28         The judgment of the circuit court of Rock Island County is affirmed.

¶ 29         Affirmed.